[No. 2890–2.  Division Two.  August 7, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. EDDIE JOE MUSTAIN, *Appellant.*

40

*Thomas Duffy*, for appellant (appointed counsel for appeal).

*Robert K. Leick, Prosecuting Attorney*, and *Grant E. Hansen, Deputy*, for respondent.

SOULE, J.—Defendant, Eddie Joe Mustain, appeals from his convictions for grand larceny and second-degree burglary. We reverse only because of the trial court's denial of defendant's request for a transcript of testimony from his first abortive trial. We find no other error but comment upon defendant's claims because the issues presented will necessarily arise upon retrial.

Some time during the late evening or early morning hours of May 4, 1976, a hardware store in Stevenson, Washington, was burglarized. At approximately 4 a.m. the same morning, Oregon deputy sheriffs received a report of a burglary in progress at Tad's Chicken 'N Dumplins, on U.S. Scenic Route 30 in Oregon near the Oregon–Washington border. Sergeant Bunnell arrived at the scene, saw that other officers were already present, and departed to investigate a yellow van he had noticed parked along Route 30, less than half a mile away. Sergeant Bunnell considered this a suspicious circumstance because he had seen no other vehicles in the area, the hour was late, and the driver's door

was ajar. After ascertaining that no one was in the van, he looked inside and saw a rifle. Further investigation disclosed a number of suspicious items (*e.g.*, a bucket of cash, burglary tools and hardware items).

Meanwhile, other officers had caught a suspect who told them that two other people were involved and were probably still in the area. When Officer James Pauley came on duty at 7 a.m., he joined in the search for the missing suspects. He knew that a burglary at Tad's had been reported. He also had information that the suspects might be hiding on an island in the Sandy River. Furthermore, he had a description of one of the suspect's clothing—the suspect was wearing blue pants, a stocking cap and a fur–collared corduroy jacket.

Defendant was arrested by Officer Pauley as he climbed up the river bank onto the highway. He was dripping wet and his clothes matched the description Officer Pauley had received. He was advised of his *Miranda* rights and searched. The search of the van had revealed a large amount of cash and an address book that contained the name of Art Broadsword. In the meantime, police had learned that the van belonged to Art Broadsword's wife. Defendant was taken to the van, again was advised of his *Miranda* rights, and was questioned. He initially denied knowing Art Broadsword and claimed to have no connection with the van. He subsequently admitted that Art Broadsword was a friend of his. He also then asked one of the officers to get his cigarettes from under the dashboard of the van.

A suppression hearing was held and the trial court ruled that evidence found in the warrantless searches of the van and defendant's person was admissible. No separate hearing on the voluntariness of defendant's statements was held. Defendant's first trial on October 28, 1976, resulted in a hung jury. His second trial was scheduled for February 14, 1977. That morning, defense counsel requested that a transcript of the first trial be provided at public expense because defendant was indigent. The trial court denied the

request. The defense then requested a continuance because a key witness was unavailable. The trial was continued until March 4. The second jury convicted defendant on the charges of burglary and grand larceny.

Defendant raises a number of issues on appeal. First, he contends that the warrantless search of the van was unconstitutional. However, defendant was not in the van at the time of the search and does not claim a proprietary or possessory interest in it. Nor is he charged with an offense for which *possession* of the items seized is an element. Thus, he has no standing to contest the constitutionality of the search. *Brown v. United States,* 411 U.S. 223, 36 L. Ed. 2d 208, 93 S. Ct. 1565 (1973); *Alderman v. United States,* 394 U.S. 165, 22 L. Ed. 2d 176, 89 S. Ct. 961 (1969); *Jones v. United States,* 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, 78 A.L.R.2d 233 (1960); *State v. Bresolin,* 13 Wn. App. 386, 534 P.2d 1394 (1975).

Defendant next challenges the arrest and search of his person on the ground that the arresting officer had no probable cause to arrest him. Probable cause to arrest without a warrant exists if the officer, from his personal knowledge or facts communicated to him by others, has a reasonable ground to believe the accused has committed a felony. *Carroll v. United States,* 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280, 39 A.L.R. 790 (1925); *State v. Bean,* 89 Wn.2d 467, 572 P.2d 1102 (1978). Here, the facts communicated to Officer Pauley were more than sufficient to give him a reasonable belief that defendant had committed a felony. The search of defendant's person was incident to a valid arrest, and therefore was lawful. *Chimel v. California,* 395 U.S. 752, 23 L. Ed. 2d 685, 89 S. Ct. 2034 (1969); *State v. Hauser,* 19 Wn. App. 506, 576 P.2d 420 (1978).

Defendant also contends that it was error not to conduct a hearing pursuant to CrR 3.5 to determine the voluntariness of his statements. The rule requires that when statements of the accused are to be offered in evidence, a hearing to determine their voluntariness must be held. However, mere failure to hold a hearing does not

make the statement inadmissible. The appellate court may examine the record and make its own determination of voluntariness. *State v. Dennis,* 16 Wn. App. 417, 558 P.2d 297 (1976). Here, the record shows that defendant was twice advised of his *Miranda* rights. There is nothing in the record to suggest that the statements were not voluntary. Counsel on appeal does not argue to the contrary. He merely asserts that failure to hold a hearing is reversible error per se. We find no merit in this contention.

Defendant's next claim of error is that he was tried more than 90 days after his arrest in violation of CrR 3.3. However, by not moving to dismiss prior to trial, defendant waived his right to a dismissal on this ground. *State v. Williams,* 85 Wn.2d 29, 530 P.2d 225 (1975).[1]

Defendant's final assignment of error involves the trial court's refusal to grant his request for a transcript of his first trial. The State must provide indigent defendants with proper transcripts of prior proceedings, or ready access thereto, when such are needed for an effective defense. *State v. Williams,* 84 Wn.2d 853, 529 P.2d 1088 (1975).[2] The trial court erroneously ruled that the transcript had no relevance to the pending trial and refused to grant the request. While the request on the morning of trial may not have been timely, the court did not rely on this ground in reaching its decision. Moreover, subsequent events rendered the timeliness issue irrelevant because the court granted a continuance of nearly 3 weeks. The transcript could have and should have been provided during this delay.

---

[1]We respectfully disagree with the reasoning of our sister court in *State v. Breaux,* 20 Wn. App. 41, 578 P.2d 888 (1978). There, Division One, in a per curiam opinion, declined to follow the rule announced in *State v. Williams,* 85 Wn.2d 29, 530 P.2d 225 (1975) on the ground that it was merely dictum. We believe that *Williams* states the correct rule and accordingly follow it.

[2]The informal alternative existing in *Britt v. North Carolina,* 404 U.S. 226, 30 L. Ed. 2d 400, 92 S. Ct. 431 (1971) is not shown to be present in the case before

44

The conviction is reversed and remanded for a new trial.

PEARSON, C.J., and PETRIE, J., concur.

us. Therefore, the general rule must be applied. *See United States v. Young,* 472 F.2d 628 (6th Cir. 1972).