589 P.2d 1338

The STATE of Arizona, Appellee,

v.

Robert WARREN, Janet Warren and Andrew Wash, Appellants.

No. 2 CA–CR 1475.

Court of Appeals of Arizona, Division 2.

Dec. 5, 1978.

Rehearing Denied Jan. 10, 1979.

Review Denied Jan. 30, 1979.

John A. LaSota, Jr., Atty. Gen., by William J. Schafer, III, and Barbara A. Jarrett, Asst. Attys. Gen., Phoenix, for appellee.

Law Offices of Robert S. Wolkin by Robert S. Wolkin, Tucson, for appellants.

## OPINION

RICHMOND, Chief Judge.

Appellants were found guilty of conspiracy to possess and transport marijuana, possession of marijuana for sale, and unlawful transportation of marijuana. At sentencing, pursuant to an agreement between the parties, the court dismissed the transportation and conspiracy counts and sentenced appellants only on the charge of possession for sale. The sole issue on appeal is whether physical evidence should have been suppressed.

Viewing the facts in a light most favorable to upholding the denial of the motion to suppress, *State v. Cook*, 115 Ariz. 188, 564 P.2d 877 (1977), we affirm.

On June 1, 1977, narcotics agents of the Department of Public Safety stopped a car on the highway between Nogales and Tucson and informed the driver that he was suspected of hauling contraband. The driver consented to a search of the car, which disclosed 31 kilo bricks of marijuana. After being placed under arrest, the driver agreed to continue the haul toward his previously planned destination, a house trailer in Tucson. One of the officers then rode in the load car as it proceeded part of the way to Tucson. After being told by the driver that "the people in the residence [had] guns," the officer requested additional help from the Department of Public Safety and from the Narcotics Strike Force. One of the strike force officers who learned of the general vicinity toward which they were proceeding reported that the load car might be going to the residence of a family that "possibly had automatic weapons."

When the officers arrived at the scene, they intended to maintain surveillance of the residence identified by the driver until somebody unloaded the vehicle, which had been parked in the driveway. The driver entered the house trailer and when he came out several minutes later was arrested a second time. After approximately 30 minutes of surveillance, the officers decided to "take the load car" before it grew dark. Because they had reason to believe there might be gunfire, they decided to go inside the residence first and secure the house and the people. At approximately 6:30 p. m., the officers identified themselves and with their guns drawn, entered the residence. The persons inside were advised of their rights and the reason for the entry. Initially, it was intended that anyone wishing to leave would be permitted to do so, but this decision was changed approximately 10 to 15 minutes later, when one of the officers reported that he had smelled marijuana and seen a marijuana pipe in one of the bedrooms. At 8:40 p. m., a telephonic search warrant based on those observations was obtained. The subsequent search produced quantities of marijuana as well as narcotics paraphernalia.

After appellants' motion to suppress and a motion for reconsideration were denied,

the matter was submitted on transcripts of the suppression hearings and the police reports.

Appellants urge that the evidence should have been suppressed because (1) the stop on the highway was without the founded suspicion required for vehicular stops, and the subsequent seizure therefore was improper; (2) the search warrant was invalid on its face because it did not establish probable cause and contained false statements by the requesting officer, and (3) the entry into the residence was improper.

■ We agree with the state that appellants have no standing to challenge the highway stop because their Fourth Amendment rights were not violated. *State v. Elias*, 111 Ariz. 195, 526 P.2d 734 (1974). Appellants did not establish ownership or control of the car, and may not object to the search and seizure of someone else's vehicle. The fact that the search produced evidence used against them is insufficient to establish standing. Once the driver was stopped and gave his voluntary consent to a search of the car, there was no question of a Fourth Amendment violation. *State v. Dugan*, 113 Ariz. 354, 555 P.2d 108 (1976).

■ We find no merit in appellants' contention that because certain statements in the affidavit were untrue, the search warrant was totally invalid. In order for a search warrant to be valid, it must be based on an affidavit containing sufficient facts to enable a magistrate to make an independent judgment as to whether there is probable cause for a search. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *State v. Watling*, 104 Ariz. 354, 453 P.2d 500 (1969). A presumption exists in favor of the validity of the warrant, *State v. Kelly*, 99 Ariz. 136, 407 P.2d 95 (1965), and the defendant has the burden of proving that it was not valid. *State v. Rangel*, 12 Ariz.App. 172, 468 P.2d 623 (1970). False statements in an affidavit are insufficient to invalidate a search warrant, absent a showing that they were intentional or at least reckless. *U. S. v. Scherer*, 523 F.2d 371 (7th Cir. 1975). Appellant did not establish that the false statements in the affidavit were made intentionally, and there was direct evidence to the contrary.

■ When the alleged false statements are excised, the warrant will be upheld if the remainder of the affidavit is sufficient to establish probable cause. *State v. Moses*, 24 Ariz.App. 305, 537 P.2d 1363 (1975). In this case, the remainder of the affidavit stated among other things that one of the officers had "observed on a table located near the doorway a bamboo pipe which smelled of burned marijuana. He also smelled the strong odor of burned marijuana." The affidavit further stated that the officer had been "trained in the identifying and recognizing marijuana and its smell." The trial court found that the affidavit established probable cause. We will not disturb that ruling. Once the trial court has made a determination of probable cause, it will be upheld if there is substantial basis for the magistrate's finding. *State v. Ballinger*, 19 Ariz.App. 32, 504 P.2d 955 (1973).

■ The remaining issue involving the officers' entry into the residence is more complex. Freedom from intrusion into the home or dwelling is the archetype of the privacy protection secured by the Fourth Amendment. *Agnello v. U. S.*, 269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925); *Dorman v. U. S.*, 140 U.S.App.D.C. 313, 435 F.2d 385 (1970). Any invasion of the privacy of the home must be given the closest kind of scrutiny by the courts. *Weeks v. U. S.*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). "[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed, . . . ." *U. S. v. U. S. District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed. 752 (1972).

■ Courts are generally faced with the problem of warrantless entries into the home for either an arrest or a search. Entry without a warrant for either purpose is per se unreasonable unless "exigent circumstances" justify the failure to obtain a warrant. *U. S. v. Shye*, 492 F.2d 886, 891 (6th Cir. 1974). It is the warrantless entry into the home, regardless of purpose, which raises serious constitutional questions.

**310**

Notwithstanding these general principles, however, the Supreme Court has specifically stated that the "Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others." *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 1646, 18 L.Ed.2d 782 (1967). "When the performance of his duty requires an officer of the law to enter upon private property, his conduct, otherwise a trespass, is justifiable." *State v. Dugan*, 113 Ariz. 354, n.1 at 356, 555 P.2d 108 at 110 (1976). *See also State v. Sainz*, 18 Ariz.App. 358, 501 P.2d 1199 (1972).

■ In this case, the police had already arrested one suspected of connection with a narcotics violation. They were staking out a house to which they were led by that suspect, with the obvious possibility of apprehending others involved in the transaction. Clearly, they were in the course of an investigation. When they made a decision to "take the load car" before dark they had reason to believe that because of the guns on the premises, their seizure might "gravely endanger their lives or the lives of others." The situation amounted to the kind of "exigent circumstances" that justified entry without a warrant, *People v. Ramey*, 16 Cal.3d 263, 127 Cal.Rptr. 629, 545 P.2d 1333 (1976), and their entry to "secure the people" was not unreasonable. Once inside, the officers made no search until they had obtained a warrant. The items named in the affidavit were in plain view of the officers. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Once the officers were lawfully on the premises they were not required to close their eyes. *State v. Warness*, 26 Ariz.App. 359, 548 P.2d 853 (1976).

■ Although the officers entered the residence at approximately 6:30 p. m., they did not obtain a telephonic search warrant until 8:40 p. m. No explanation for the delay was sought or offered at the suppression hearing, but appellants now for the first time attack the police procedure on the basis of the delay. There is testimony that a six-pack of beer was purchased by the officers and shared with one of the appellants during this time. Appellants argue that the record establishes the kind of police behavior that must be discouraged and that a two-hour delay in securing a search warrant coupled with the party-like atmosphere they describe operates to invalidate the warrant.

It is true that where the police secure a residence before obtaining a warrant, the Arizona Supreme Court has conditioned the reasonableness of securing the premises on there being no unreasonable delay in seeking and procuring the warrant. *State v. Broadfoot*, 115 Ariz. 537, 566 P.2d 685 (1977). While we do not condone a failure to act promptly in securing a telephonic search warrant, where the reasonableness of the delay was not challenged in the trial court, it may not be urged as the basis for reversal on appeal.

Affirmed.

HOWARD and HATHAWAY, JJ., concur.