619 P.2d 1047

**The STATE of Arizona, Appellee,**

v.

**Charles Frederick HADD, Appellant.**

**No. 2 CA–CR 1952.**

Court of Appeals of Arizona,
Division 2.

Sept. 23, 1980.
Rehearing Denied Nov. 5, 1980.
Review Denied Nov. 25, 1980.

Robert K. Corbin, Atty. Gen. by William J. Schafer, III, and Robert S. Golden, Asst. Atty. Gen., Phoenix, for appellee.

John D. Kaufmann, Tucson, for appellant.

## OPINION

HATHAWAY, Chief Judge.

On December 6, 1979, the appellant, Charles Frederick Hadd, was convicted of unlawful possession of a narcotic drug for sale and unlawful possession of marijuana for sale, with a prior conviction for unlawful possession of marijuana for sale. From these convictions and a sentence of imprisonment in the Arizona State Prison for five to six years, he appeals.

The facts pertinent to this appeal are as follows. On the evening of July 6, 1978, a group of law enforcement officials from a variety of agencies, acting on an informant's tip, met in Tucson to conduct a "buy–bust" operation on a suspected marijuana dealer, Robert Gartmann. The agents set up surveillance of Gartmann's residence, and two undercover agents as well as the informer drove up to the apartment. The informant talked with Gartmann briefly, then returned to the agents' car. After the undercover agents drove away, Gartmann entered his vehicle and was followed by another surveillance unit to a local convenience market, where he made a phone call. After returning to his residence for a few minutes, he again entered his car and drove to appellant's residence. He parked in appellant's driveway and appeared to go into appellant's house. Several minutes later, Gartmann left and drove back to his apartment.

A few minutes later, the undercover agents and the informant drove back to Gartmann's apartment, and Gartmann joined them in their unmarked car. Gartmann presented a small bag of marijuana

to the agents and said he could sell them approximately one–half pound for $280. After negotiations, the parties agreed on a price and parted company. Gartmann was then observed driving to a pay telephone, making a phone call, and returning to appellant's residence. After 15 to 20 minutes, Gartmann returned directly to his apartment, where he was arrested. A search of his vehicle revealed a package which contained marijuana.

Some of the agents then proceeded to the Department of Public Safety headquarters where they obtained a telephonic search warrant for both Gartmann's and appellant's residences. Armed with the warrant, the agents went to appellant's home, arrested him and others in the house, and after a thorough search confiscated a quantity of marijuana, as well as cocaine, weighing scales and narcotics paraphernalia.

Appellant raises a variety of issues on appeal, which will be discussed in the following order:

1. Did the failure of the agent and the justice of the peace to strictly comply with the statutory requirements for a telephonic search warrant violate appellant's due process rights?

2. Did consideration of a tape recording of the telephonic search warrant not in evidence by the judge at the suppression hearing violate appellant's due process rights?

3. Did alleged misrepresentations in the search warrant affidavit vitiate the warrant, and was the warrant supported by probable cause?

4. Was the search of appellant's residence a general search, prohibited by the Fourth Amendment?

5. Does a violation of Rule 9.3 by the deputy county attorney and state's witnesses require reversal?

6. Did the trial court abuse its discretion in allowing the state to allege a prior conviction on the date of trial?

## TELEPHONIC SEARCH WARRANT

The affidavit for the search warrant in this case was prepared by Louis Chaboya, a criminal investigator for the Department of Public Safety. Chaboya phoned a justice of the peace late in the evening on July 6 and read the prepared affidavit to him. He was instructed that probable cause existed for a search and that he should complete a duplicate original search warrant. Chaboya did so, signing the warrant in the magistrate's name. The following day, he gave the tape recording of the phone call to a DPS secretary for transcription. Eventually this transcript was returned to the justice court, although it was originally misfiled. An affidavit of inventory seized at appellant's residence, signed by the magistrate, was also filed, along with the duplicate original search warrant. Apparently, no original search warrant was ever prepared or signed by the magistrate. The magistrate also failed to certify the transcription of the telephone conversation, as Agent Chaboya maintained possession of the tape recording up until the date of the suppression hearing.

The statutory provisions concerning telephonic search warrants in effect when the warrant herein was executed included:

Sec. 13–1444 (currently § 13–3914):

"A. The magistrate may, before issuing the warrant, examine on oath the person or persons, seeking the warrant, and any witnesses produced, and must take his affidavit, or their affidavits, in writing, and cause the same to be subscribed by the party or parties making the affidavit. The magistrate may also, before issuing the warrant, examine any other sworn affidavit submitted to him which sets forth facts tending to establish probable cause for the issuance of the warrant.
B. The affidavit or affidavits must set forth the facts tending to establish the grounds of the application, or probable cause for believing they exist.
C. In lieu of, or in addition to, a written affidavit, or affidavits, as provided in subsection A, the magistrate may take an oral statement under oath which shall be recorded on tape, wire, or other compara-

ble method. This statement may be given in person to the magistrate, or by telephone, radio, or other means of electronic communication. This statement shall be deemed to be an affidavit for the purposes of issuance of a search warrant. In such cases if a recording of the sworn statement has been made, the magistrate shall direct that the statement be transcribed and certified by the magistrate and filed with the court."

Sec. 13–1445 (currently § 13–3915):

"C. The magistrate may orally authorize a peace officer to sign the magistrate's name on a search warrant if the peace officer applying for the warrant is not in the actual physical presence of the magistrate. This warrant shall be called a duplicate original search warrant and shall be deemed a search warrant for the purposes of this chapter. In such cases, the magistrate shall cause to be made an original warrant and shall enter the exact time of issuance of the duplicate original warrant on the face of the original warrant. Upon the return of the duplicate original warrant, the magistrate shall cause the original warrant and the duplicate original warrant to be filed as provided for in § 13–1453."

Sec. 13–1448 (currently § 13–3918):

"B. If a duplicate original search warrant has been executed, the peace officer who executed the warrant shall enter the exact time of its execution on its face."

Appellant contends that because certain provisions of these statutes were not followed, the warrant authorizing the search of his residence was invalid and all evidence seized thereunder must be suppressed.

■ When a question is raised in regard to a search warrant, we must determine whether statutory procedure has been substantially followed and whether the court issuing the warrant had sufficient grounds upon which to base its decision. *State v. Kelly*, 99 Ariz. 136, 407 P.2d 95 (1965). There is a presumption in favor of the validity of a search warrant. Id. Arizona's statutes authorizing telephonic search warrants were adopted from the Cal-

ifornia Penal Code, and we may look to decisions of that state in interpreting them. *State v. McMann*, 3 Ariz.App. 111, 412 P.2d 286 (1966). These statutes should be interpreted to promote rather than defeat the general policies of the law and to produce a result that is reasonable. *People v. Peck*, 38 Cal.App.3d 993, 113 Cal.Rptr. 806 (1974). The emphasis should be upon substance, not form, in the issuance of a telephonic search warrant. *People v. Chavez*, 27 Cal.App.3d 883, 104 Cal.Rptr. 247 (1972).

■ The issuing magistrate failed to certify the contents of the transcribed recording in this instance pursuant to former § 13–1444(C). Although the duplicate original warrant was filed with the court, the magistrate did not file an original warrant pursuant to former § 13–1445(C). Agent Chaboya neglected to include citations in his duplicate warrant, and failed to enter the exact time of execution on the warrant, in violation of former §§ 13–1445(B) and 1448(B).

Neither our courts nor those of California have considered the effect of violations of this nature. In *Yuma County Attorney v. McGuire*, 109 Ariz. 471, 512 P.2d 14 (1973), it was held that an issuing judge's inadvertent failure to sign a warrant did not affect its validity. In *State v. Smith*, 112 Ariz. 531, 544 P.2d 213 (1975), the failure of the state to produce the search warrant affidavit was held not to invalidate a search warrant. Technical violations such as failure to record the administration of the oath (*State v. Mead*, 120 Ariz. 108, 584 P.2d 572 (App. 1978)), failure to return the warrant within the prescribed period (*State v. Tillery*, 107 Ariz. 34, 481 P.2d 271 (1971), cert. den. 404 U.S. 847, 92 S.Ct. 151, 30 L.Ed.2d 84 (1971)), and use of a copy rather than the original search warrant at trial. (*State v. Sherrick*, 98 Ariz. 46, 402 P.2d 1 (1965), cert. den. 384 U.S. 1022, 86 S.Ct. 1938, 16 L.Ed.2d 1024 (1966)), have been held not fatal to the validity of a warrant. On the other hand, the failure to record the statements made to obtain a telephonic search warrant or to make them under oath will render the war-

rant invalid. *State v. Boniface*, 26 Ariz. App. 118, 546 P.2d 843 (1976). The failure to execute any writing before the search invalidates a telephonic search warrant. *Bowyer v. Superior Court*, 37 Cal.App.3d 151, 111 Cal.Rptr. 628 (1974), reh. den. 37 Cal.App.3d 151, 112 Cal.Rptr. 266.

■ A close reading of the cases decided under these provisions indicates that the violations which occurred relating to the search of appellant's residence were technical in nature and do not render the warrant invalid. The key element in the issuance of a telephonic warrant, like any other warrant, is consideration of the affidavit by a neutral and detached magistrate. *Yuma County Attorney v. McGuire*, supra. It would be a different case if there was proof otherwise, but here it is clear that the magistrate heard testimony from Agent Chaboya under oath upon which he based his finding of probable cause. As in *State v. Smith*, supra, there is no hint of intentional misconduct or bad faith on the part of the prosecution. The California Court of Appeals, faced with a similar question, stated that a literal compliance with the statutory provisions is preferable, as it removes all doubt. *People v. Chavez*, 27 Cal.App.3d 883, 104 Cal.Rptr. 247 (1972). In light of the potential for abuse, it is especially important that the judiciary and law enforcement officials comply strictly with the statutory guidelines for telephonic search warrants. Under the facts of this case, however, substantial compliance rather than literal compliance does not void the warrant. As in *Chavez*, this is particularly so in view of appellant's failure to demonstrate prejudicial error resulting from the procedural irregularity.

## TAPE RECORDING

Appellant next questions the propriety of the trial judge's actions at the suppression hearing. Faced with the question of the accuracy of the telephonic affidavit transcription, the judge took possession of the tape, which had not yet been admitted into evidence, listened to it and found that the transcription was "accurate in all material respects." After objection by appellant, the judge allowed the state to reopen its case for the purpose of offering the tape into evidence, and admitted the tape in evidence. Appellant contends that consideration of matters not in evidence jeopardized the role of the judge as an impartial fact finder and violated his due process rights.

■ The cases appellant cites to support his argument deal with jurors receiving and considering evidence not admitted at trial. Rule 24.1(c)(3)(i), Arizona Rules of Criminal Procedure, relied on by appellant, specifically refers only to jurors. In a court hearing, a liberal practice in the admission of evidence is followed supported with a presumption on appeal that the judge below, knowing the applicable rules of evidence, will not consider matters which are inadmissible when making his findings. *State v. Miles*, 77 Wash.2d 593, 464 P.2d 723 (1970). The judge at the suppression hearing properly considered the tape recording, and was within his discretion in allowing the state to reopen its case to offer the tape into evidence. Rule 104(a), Arizona Rules of Evidence (preliminary questions of admissibility are to be decided by the court); *State v. Riggins*, 111 Ariz. 281, 528 P.2d 625 (1974). In any event, the judge was seeking the truth and there has been no showing that appellant was prejudiced by the use of the tape recording, requiring a new trial. *State v. Turrentine*, 122 Ariz. 39, 592 P.2d 1305 (App.1979).

## PROBABLE CAUSE

Appellant attacks the magistrate's finding of probable cause on two grounds: First, that alleged misrepresentations contained in Agent Chaboya's affidavit vitiate the warrant and require that all items seized be suppressed, and second, that all information received pursuant to the informant's tip must be suppressed because the requirements of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), were not met. We find that neither of these contentions have merit.

Agent Chaboya's affidavit contained three statements allegedly made by Gart-

mann which incriminated appellant and supported a finding of probable cause to search his residence. There was conflicting testimony at the suppression hearing as to whether any of the statements had been made or whether they were relayed to the affiant, Agent Chaboya. The judge at the suppression hearing stated:

"The Court cannot find that Chaboya intentionally made misstatements in the affidavit in support of the warrant. Even if the misstatements were inaccurate, there were more than enough other facts contained therein to support a finding of probable cause. Particularly is this true if the information from the confidential informant is excluded."

■ A judicial determination of probable cause will be upheld if there was a substantial basis for the magistrate's finding. *State v. Ballinger*, 19 Ariz.App. 32, 504 P.2d 955 (1973). Even if we assume the questioned statements in Chaboya's affidavit were false, we have held that false statements alone are insufficient to invalidate a warrant absent a showing that they were intentional or at least reckless. *State v. Warren*, 121 Ariz. 306, 589 P.2d 1338 (App.1978). As in *Warren*, appellant did not establish that the questioned statements in the affidavit were intentional falsehoods.

■ Even after striking the allegedly false statements in the affidavit, the remainder of the recitals are sufficient to establish probable cause and thus the warrant must be upheld. *State v. Moses*, 24 Ariz.App. 305, 537 P.2d 1363 (1975); *State v. Warren*, supra. The affidavit set forth the details of what the officers had seen during their surveillance, as discussed earlier. The fact that Gartmann was observed visiting appellant's home just after he arranged to sell marijuana to the undercover agents, and the fact that marijuana was found in his vehicle immediately after he left appellant's home, support a conclusion of probable cause that marijuana was located there. *State v. Urrutia*, 24 Ariz.App. 439, 539 P.2d 913 (1975); *State v. Watson*, 113 Ariz. 218, 550 P.2d 89 (1976); *State v.*

*Williamson*, 20 Ariz.App. 397, 513 P.2d 686 (1973).

■ Appellant asserts that the warrant was invalid because it failed to contain underlying facts concerning the reliability of the confidential informant who led the officers to Gartmann and the manner in which the informant obtained his information, in violation of *Aguilar v. Texas*, supra. Nevertheless, the warrant was properly issued in this case because excluding any information provided by the informant, the remaining information within the personal knowledge of Agent Chaboya and the other officers participating in the surveillance, as reflected in the affidavit, was adequate in and of itself to support a finding of probable cause. *State v. Watson*, 114 Ariz. 1, 559 P.2d 121 (1976), cert. den. 430 U.S. 986, 97 S.Ct. 1687, 52 L.Ed.2d 382 (1977); *State v. Watkins*, 122 Ariz. 12, 592 P.2d 1278 (App. 1979).

## SCOPE OF SEARCH

■ The search warrant executed by Agent Chaboya and other officers stated that "a narcotic drug to wit: marijuana" was concealed within appellant's residence. During the search, the officers seized many different packages and "baggies" of marijuana, which were found throughout the house, and narcotics paraphernalia. As a part of the search, Agent Chaboya looked into various containers in appellant's refrigerator. From a butter dish in the refrigerator, he seized a quantity of cocaine, which was admitted into evidence. A number of weighing scales were also seized, as well as personal items including a pistol which were suppressed.

Appellant contends that all the items were seized pursuant to a general search, prohibited by the Fourth Amendment. He contends the officers expanded their search to places where marijuana was not likely to be found, and asserts that the seizure of cocaine and other items not listed in the warrant "is a prima facie showing that the search exceeded the limitations prescribed by the warrant."

The plain view doctrine provides that (1) where officers make a valid initial intrusion based on a search warrant or an exception to the warrant requirement, (2) they may seize objects which they inadvertently see in plain view (3) which are immediately recognizable as evidence. *State v. Smith*, 122 Ariz. 58, 593 P.2d 281 (1979); *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The search in this case was properly conducted under these guidelines. When during a lawful search officers discover evidence of possession of illegal goods other than those listed in the warrant, the discovered goods may be seized. *State v. McMann*, 3 Ariz. App. 111, 412 P.2d 286 (1966); *State v. Fox*, 110 Ariz. 77, 515 P.2d 322 (1973). Further, instrumentalities of a crime may be seized where there is a nexus between them and criminal behavior. *State v. Caldwell*, 20 Ariz.App. 331, 512 P.2d 863 (1973). The items not suppressed were properly admitted at trial.

### RULE 9.3 VIOLATION

The trial of this case began on October 31, 1979. Early that afternoon, the trial judge placed all prospective witnesses except Agent Chaboya under "the rule." Rule 9.3, Arizona Rules of Criminal Procedure, provides:

> "a. Witnesses. Prior to or during any proceeding the court may, and at the request of either party shall, exclude prospective witnesses from the courtroom and direct them not to communicate with each other until all have testified."

After recessing for the first day, the prosecutor adjourned with several of his witnesses into a conference room near the courtroom. Appellant's attorney saw this and informed the trial judge, who intervened and terminated the meeting. The following day, the trial judge held a hearing where he extensively questioned the prosecutor and many of the witnesses who violated the rule. Appellant moved for a mistrial. The trial court denied the motion, finding that the violation was not wilful and that nothing prejudicial to appellant

had been discussed. After the jury was brought in, appellant's counsel was permitted to cross-examine each witness regarding his failure to comply with the rule. Appellant contends that the only remedy available for the violation of the rule is to reverse the conviction. We disagree.

Our Supreme Court has stated that a mere violation of this rule does not result in automatic reversal. *State v. Schaefli*, 117 Ariz. 1, 570 P.2d 772 (1977). The admission of testimony after a rule violation is a matter of discretion with the trial judge, and absent an abuse of that discretion and subsequent prejudice to appellant, we will not interfere. *State v. Sowards*, 99 Ariz. 22, 406 P.2d 202 (1965). There was no abuse of discretion here and no prejudice.

### ALLEGATION OF PRIOR CONVICTION

The Pima County grand jury indicted appellant on September 7, 1978, and charged by indictment a prior conviction for unlawful possession of marijuana for sale. On the day of trial, appellant moved to dismiss the allegation pursuant to *State v. Birdsall*, 116 Ariz. 112, 568 P.2d 419 (1977). The trial judge granted the motion, but then allowed the state to allege the prior conviction on its own motion. The jury found that appellant had been previously convicted. Appellant contends the trial court abused its discretion in permitting the prior conviction to be alleged on the eve of trial.

*State v. Birdsall* governed the allegation of prior convictions when the indictment was returned. The prior conviction for possession of marijuana for sale was properly alleged by the jury in the indictment, pursuant to the then applicable Uniform Narcotic Drug Act, A.R.S. §§ 36–1002 through 1002.08. *State v. Birdsall*, supra, footnote 3. See also, *State v. Deddens*, in and for the County of Cochise, 119 Ariz. 156, 579 P.2d 1126 (App.1978). Even if the dismissal was proper, the trial court did not abuse its discretion in allowing the state to allege the prior on the eve of trial, since appellant clearly had notice of it before

trial and was not prejudiced thereby. *State v. Birdsall*, supra; former A.R.S. § 13–1649(C).

We have reviewed the record for fundamental error and find none. Affirmed.

HOWARD and RICHMOND, JJ., concur.