The **STATE of Utah, Plaintiff and Appellant,**

v.

**Anthony Price SCHLOSSER and Harris Lowder, Defendants and Appellees.**

No. 860061.

Supreme Court of Utah.

May 17, 1989.

Stephen R. McCaughey, Christine S. Soltis, Salt Lake City, for Schlosser.

Loni F. DeLand, Salt Lake City, for Lowder.

R. Paul Van Dam, Sandra L. Sjogren, Salt Lake City, Donald J. Eyre, Juab County, for plaintiff and appellant.

STEWART, Justice:

Defendants Schlosser and Lowder were charged with unlawful possession of a controlled substance in violation of Utah Code Ann. § 58–37–8(2)(a)(i) (Supp.1988). Upon defendants' motion, the trial court ordered the suppression of all evidence obtained during a search of the pickup truck the defendants were riding in. On appeal, the State argues that the evidence was improperly suppressed. We affirm.

## I. THE FACTS

Officer Howard of the Utah Highway Patrol clocked a pickup truck traveling forty-two miles per hour in a thirty mile-per-hour zone in Nephi, Utah, and signaled the vehicle to pull over. As the vehicles were pulling over, Officer Howard observed defendant Schlosser, a passenger in the vehicle, bending forward, acting fidgety, turning to the left and to the right, and turning back to look at the officer. After stopping the vehicle, the driver, defendant Lowder, got out of the truck and met Offi-

cer Howard between the truck and the patrol car with a valid driver's license and vehicle registration ready to show the officer. Schlosser continued to move about in the cab of the truck. Defendants' behavior led the officer to conclude that Schlosser was trying to hide something. Officer Howard approached the passenger side of the vehicle, tapped on the closed window, immediately opened the passenger door, and asked Schlosser for identification. Officer Howard testified that he asked for identification as a pretense for trying to determine what Schlosser may have been hiding.[1] Upon opening the door, Officer Howard scanned the interior of the truck for contraband and saw a bag of marijuana in the passenger door pocket. He also smelled marijuana smoke. Defendants were arrested, and in a subsequent search of the vehicle, additional bags of marijuana, drugs, drug paraphernalia, and two unloaded firearms were also found.

Defendants were charged with unlawful possession of a controlled substance. On defendants' motion, the trial court suppressed all the evidence seized. In ruling on the motion, the trial court found that Officer Howard acted on "a mere suspicion that the defendant [Schlosser] was engaged in criminal activity," had no legal basis for the search and seizure, and ordered the evidence taken from the automobile suppressed.[2]

---

1. Officer Howard testified at the preliminary hearing as follows:

Q. What I'm getting at is: the fact, is it not, that you went around and approached the passenger and talked to him was because you suspected he was doing something wrong, is that right?
A. Or hiding something, yes.
Q. Or hiding something. You didn't know what he may be hiding?
A. No, I also asked him for a driver's license which he didn't produce.
Q. And that's not normal when you make a speeding stop to go ask all the passengers in the vehicle for their identification?
A. Not normal, no.
Q. So you were operating on this suspicion or hunch or whatever you want to call it that there was something not right on the passenger side of the vehicle?
A. Yes, that's correct.
Q. So, based on that suspicion, you walked around. Did you ask through the window or did you ask him to step out?
A. No, I knocked on the door and at that time I opened the door and asked the gentleman if he had any identification.
Q. So you opened the door and he sat there. Was the window closed?
A. As I recall, it was closed.
Q. Didn't talk to him at all through that window?
A. Not that I recall.
Q. You opened it up and is that when you asked him for identification?
A. Yes sir.
Q. By what authority were you asking the passenger of this vehicle to identify himself?
A. At the time of the stop I'm asking the passenger for identification check as well as the driver for identification check.
Q. But, as you testified earlier, it's not normal or customary or routine to check passengers of the vehicle for identification?
A. I've checked numerous passengers for it.

Q. I'm sure you have. I'm asking if that's normal and customary when you pull someone over for speeding to ask the passenger for identification.
A. Not normally for just speed, no.
Q. But you had this other hunch. Suspicion?
A. Well, I was going on what he was doing in the vehicle and, yes, I did walk up and see who he was.
Q. Tell me what your present state of mind was? What was it you thought he was doing? What did you suspect?
A. Hiding something.
Q. Did you have any idea what he was hiding?
A. No sir.
Q. Did you have any suspicion of what he was hiding?
A. No sir.

2. The trial court made the following findings in support of its suppression order:

1. The police officer had no valid reason to order the defendant Schlosser out of the automobile or to request Schlosser to empty his pocket and search the automobile.
2. Any action taken by the police officer with regards to Defendant Schlosser was based on a mere suspicion that the defendant was engaged in criminal activity.
3. All evidence [which is the] subject of the motion to suppress was discovered as a direct consequence of the illegal detention and search of Defendant Schlosser and the automobile.
4. The Court finds, as required by Utah Code Ann. § 77–35–12(g)(1) that the violation of the defendants' constitutional rights was substantial and finds that the officer did not act in good faith, and so finds by a preponderance of the evidence.

The basis for these findings is that the police officer acted without a legitimate law enforce-

On this appeal, we employ the usual standard of review; we will not reverse the trial court's findings of fact unless they are clearly erroneous. *State v. Gallegos*, 712 P.2d 207, 208–09 (Utah 1985); *State v. Cole*, 674 P.2d 119, 122 (Utah 1983).

## II. SEARCH OF AN AUTOMOBILE STOPPED FOR TRAFFIC INFRACTION

The State contends that Officer Howard's opening of the passenger door and questioning of Schlosser did not constitute an unlawful search of the passenger compartment of the car, and therefore, the discovery of the marijuana in the pouch of the door and the seizure of the contraband was not unlawful.

 Although a person has a lesser expectation of privacy in a car than in his or her home, *California v. Carney*, 471 U.S. 386, 390–93, 105 S.Ct. 2066, 2068–70, 85 L.Ed.2d 406 (1985), one does not lose the protection of the Fourth Amendment while in an automobile. However, when an officer stops a vehicle for a traffic violation, he may briefly detain the vehicle and its occupants while he examines the vehicle registration and the driver's license. *See Delaware v. Prouse*, 440 U.S. 648, 654, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). An officer, for his own protection, may also order a driver out of a vehicle which has been stopped for a traffic violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977).[3] If no arrest is made, an officer may make a warrantless search of the automobile only if there is probable cause for the search, *United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2173, 72 L.Ed.2d 572 (1982); 1 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 3.1(a), at 542–43 (2d ed. 1987), or if the officer has a reasonable and "articulable suspicion that the suspect is potentially dangerous," *Michigan v. Long*, 463 U.S. 1032, 1052–55 n.

16, 103 S.Ct. 3469, 3482–83 n. 16, 77 L.Ed.2d 1201 (1983) (search limited to a search for weapons).

Since Officer Howard's investigative actions went beyond the scope of the traffic stop, we turn to the issue of whether his opening the passenger door for investigatory purposes constituted an unlawful "search" under the Fourth Amendment. In *New York v. Class*, 475 U.S. 106, 114–15, 106 S.Ct. 960, 966–67, 89 L.Ed.2d 81 (1986), the Supreme Court stated that "a car's interior as a whole is ... subject to Fourth Amendment protection from unreasonable intrusions by the police." The Court held that an officer's opening the driver's door of an automobile to examine the vehicle identification number constituted a "search" and that the search was justified because the officer sought only to uncover the VIN, or vehicle identification number, a number required by state law to be located in a place ordinarily in plain view from outside the vehicle. 475 U.S. at 114, 119, 106 S.Ct. at 966, 969. The Court warned, however, that "[i]f the VIN is in the plain view of someone outside the vehicle, there is no justification for governmental intrusion into the passenger compartment to see it." 475 U.S. at 119, 106 S.Ct. at 969. Clearly, the State has no regulatory interest or justification in this case that is similar to the state's interest in *Class* to justify the intrusion into the passenger compartment.

 In *Arizona v. Hicks*, 480 U.S. 321, 325, 107 S.Ct. 1149, 1153, 94 L.Ed.2d 347 (1987), the Supreme Court held that even a small intrusion beyond the legitimate scope of an initially lawful search is unlawful under the Fourth Amendment. *See also State v. Gallegos*, 712 P.2d 207 (Utah 1985). Officer Howard's testimony established that his opening the car door exceeded the legitimate objectives of a traffic stop. The officer's "clear initial objective" in opening the car door was to see whether

---

ment purpose and that to allow the conduct of a peace officer under the circumstances of this case would significantly erode Fourth Amendment protections.

**3.** The Supreme Court expressly limited this holding to the "driver" of a vehicle stopped lawfully pursuant to a traffic violation. *Mimms*, 434 U.S. at 110 n. 5, 111 n. 6, 98 S.Ct. at 333 n. 5, 333 n. 6.

Schlosser was "hiding something." However, without probable cause to justify it, that act clearly exceeded the lawful scope of a legitimate governmental interest.

▆▆▆▆ Furthermore, it cannot be said that the discovery of the contraband was lawful because it was in "plain view." Opening the door revealed to the officer portions of the passenger compartment that he could not otherwise see and which were not, therefore, in plain view. *See State v. Lee,* 633 P.2d 48 (Utah), *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981). To remove a search from the limitations of the Fourth Amendment under the plain view doctrine, an officer must be able to observe what is in open or plain and lawful view when he is located where he has a lawful right to be. *See Hicks,* 480 U.S. at 326–28, 107 S.Ct. at 1153–54; *Lee,* 633 P.2d at 51. Since opening the car door constituted an unlawful search, the discovery of the contraband upon opening the door cannot be justified under the plain view doctrine.

This conclusion is also supported by *Commonwealth v. O'Connor,* 21 Mass. App. 404, 487 N.E.2d 238 (1986). There, the arresting officer observed the defendant "reaching down below the dash of the vehicle." 21 Mass.App. at 405, 487 N.E.2d at 239. The officer opened the door to converse with the defendant and observed a piece of glass with a white powder on it, whereupon the officer conducted a search and arrested the defendant for possession of cocaine. The court held that "the offi-

cer had no right to open the car door" and that since he would not have discovered the cocaine had he not opened the door, the subsequent discovery was the product of an illegal search and should have been suppressed. 21 Mass.App. at 406, 487 N.E.2d at 240.[4]

Likewise, in *People v. Superior Court of Yolo County,* 3 Cal.3d 807, 478 P.2d 449, 91 Cal.Rptr. 729 (1970), an officer lawfully stopped the defendants' vehicle for speeding. The driver acknowledged the violation and produced a valid driver's license. Because of furtive movements by the passenger, the officer walked to the passenger side of the car, opened the door, and looked inside, where he discovered marijuana. The officer admitted that he opened the door because he suspected that the passenger was hiding something. The California Supreme Court rejected the validity of the search because the officer, prior to opening the door, did not have probable cause to believe the occupants of the car possessed (1) instrumentalities used to commit a crime, (2) contraband or stolen goods, or (3) weapons which could be used to assault the officer. Since the contraband was not visible from outside the car and did not come into view until the officer had opened the door, its discovery did not fall within the plain view doctrine. 3 Cal.3d at 817, 478 P.2d at 454, 91 Cal.Rptr. at 734. Accordingly, the court held that the evidence was properly suppressed. *See also United States v. Frisbie,* 550 F.2d 335 (5th Cir. 1977) (lowering of vehicle tailgate violated driver's reasonable expectation of privacy);

---

**4.** *State v. Perez,* 181 Conn. 299, 435 A.2d 334 (1980), is also factually similar. An investigating officer stopped a car because the front license plate was missing, a violation of Connecticut law. After talking to the driver and noting a television set in the back seat, the officer attempted to talk to the defendant, a passenger. He asked the defendant to roll down the window so they could talk, but the defendant replied that the window was broken. The officer then asked him to open the door, whereupon both the defendant and the officer opened the door together. The ensuing discovery of stolen goods resulted in arrests. In upholding the conviction, the Connecticut Supreme Court emphasized the acquiescence of the defendant: "[The officer] asked Perez to open the door. This was a reasonable request in view of the circumstanc-

es.... It was also a request in which Perez acquiesced; Perez and [the officer] together opened the door." 435 A.2d at 338. Since the case turned on this factual point, it is distinguishable from *O'Connor* and the present case.

*State v. Ferrise,* 269 N.W.2d 888 (Minn.1978), appears at first glance to be contrary to the rule stated in the text, but it is also distinguishable. In that case, the officer's apparent purpose for talking with the passenger was to identify the driver because the driver was unable to produce a driver's license. The officer opened the passenger door because snow covered most of the vehicle and the officer could not see the passenger to communicate. Thus, the intrusion was solely to identify the driver, a clearly legitimate purpose. *See also Class,* 475 U.S. at 118–19, 106 S.Ct. at 968–69.

*Commonwealth v. Podgurski*, 386 Mass. 385, 436 N.E.2d 150 (1982), *cert. denied*, 459 U.S. 1222, 103 S.Ct. 1167, 75 L.Ed.2d 464 (1983) (officer's poking his head inside slightly open sliding van door required suppression of evidence); *People v. Aquino*, 119 A.D.2d 464, 500 N.Y.S.2d 677, 679 (1986) ("[The officer] did not merely look into the vehicle from outside. He bent his head into the car to conduct a visual inspection of what would otherwise be hidden from plain view. This was improper."). *Cf. State v. Harder*, 8 Kan.App.2d 98, 650 P.2d 724, 727 (1982) (evidence admissible because initial intrusion came within the plain view doctrine); *State v. Lancaster*, 64 Or.App. 607, 669 P.2d 377, 379 (1983) (evidence admissible because contraband was seen from lawful vantage of public street without *entering* the vehicle).

In this case, Officer Howard's opening of the passenger door was a search that was not incidental to the routine traffic stop and not justified by any exception to the Fourth Amendment requirement of probable cause.

## III. REASONABLE SUSPICION OF CRIMINAL ACTIVITIES

■ The State argues that the officer's opening the door constituted an extension of an "investigative detention" and that the officer's actions were lawful because defendants' activities gave rise to a reasonable suspicion either of criminal activities or of danger to the officer's personal safety. Therefore, the State asserts that the judge erroneously applied a probable cause standard instead of a reasonable and articulable suspicion standard in the hearing on the motion to suppress. As stated above, Officer Howard's action of opening the car door constituted a search, not an investigative detention, and therefore, the probable cause standard was correctly applied by the trial court. However, even if the State's premise were accepted that no search occurred, the facts do not support a reasonable and articulable suspicion of criminal activity which is necessary to support the State's position. *See State v. Dorsey*, 731 P.2d 1085 (Utah 1986); *State v.*

*Carpena*, 714 P.2d 674 (Utah 1986); *State v. Swanigan*, 699 P.2d 718 (Utah 1985).

■ An investigative detention is justified if a police officer has a reasonable and articulable suspicion that the automobile's occupants are "involved in criminal activity." *United States v. Hensley*, 469 U.S. 221, 226, 105 S.Ct. 675, 679, 83 L.Ed.2d 604 (1985); *Dorsey*, 731 P.2d at 1087, 1090. Additionally, an officer may search a vehicle for weapons if he has a reasonable belief that the suspect is dangerous and "may gain immediate control of weapons." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). In such instances, "due weight must be given, not to [the officer's] inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968).

Here, Officer Howard had no warrant, no probable cause, and no articulable suspicion either that his safety was in danger or that the occupants were engaged in criminal activity. He cited no safety concerns as the basis for his actions; he sought only to investigate the possibility that defendants were engaged in illegal activity, and for that reason he opened the passenger door. *Compare United States v. Pajari*, 715 F.2d 1378, 1382 (8th Cir.1983) (driver's nervousness coupled with information from multiple informants and previous police observations provided reasonable, articulable suspicion for investigative stop) *with Jones v. United States*, 391 A.2d 1188, 1191 (D.C. 1978) (furtive gestures by a passenger and location of vehicle and time of stop did not "rise to the level of articulable suspicion").

■ Officer Howard's testimony does not support an articulable suspicion of criminal activity. Mere furtive gestures of an occupant of an automobile do not give rise to an articulable suspicion suggesting criminal activity. *See People v. Superior Court of Yolo County*, 3 Cal.3d at 821–24, 478 P.2d at 457–59, 91 Cal.Rptr. at 737–39 (passenger's actions of turning and putting her arm over the back of the seat, then

facing forward, bending down towards floor, and then resuming normal position did not support probable cause to search); *Spence v. State,* 525 So.2d 442 (Fla.App. 1988) (leaning down as if putting something on floorboard did not justify officer's suspicion); *People v. Mills,* 115 Ill.App.3d 809, 71 Ill.Dec. 247, 450 N.E.2d 935 (1983) (defendant's fast movements and leaning forward as officer approached did not create reasonable suspicion). *Cf. State v. Cyr,* 501 A.2d 1303 (Me.1985) (occupant of vehicle, in heavy crime area late at night, ducking down as if to avoid detection as officer drove by constituted basis for articulable suspicion).

 Schlosser's movements, turning to the left and to the right, appearing fidgety, bending forward, and turning to look at the officer, do not, without more, show a reasonable possibility that criminal conduct had occurred or was about to occur. Schlosser may have been attempting to locate a driver's license. He could have been preparing for conversation with the officer by turning down the volume on the radio or extinguishing a cigarette. He may also have been putting away food and beverages, changing a baby's diaper, putting on the parking brake or doing a host of other innocuous things. When confronted with a traffic stop, it is not uncommon for drivers and passengers alike to be nervous and excited and to turn to look at an approaching police officer. *See State v. Mendoza,* 748 P.2d 181, 184 (Utah 1987). A search based on such common gestures and movements is a mere "hunch," not an articulable suspicion that satisfies the Fourth Amendment.

 A driver's leaving the vehicle to talk to the officer, as Lowder did, is also reasonable behavior and not indicative of criminal conduct. *Pennsylvania v.*

*Mimms,* 434 U.S. at 110, 98 S.Ct. at 333, states that a driver's exiting his vehicle to talk with a police officer may actually be safer for the officer than for him to talk to the driver who remains inside the vehicle. *See also People v. Superior Court,* 3 Cal.3d at 826–27, 478 P.2d at 462, 91 Cal. Rptr. at 742. Officer Howard did not point to anything which made Lowder's exiting the truck unusual or suspicious. Lowder had his driver's license and registration in hand, but that is neither unreasonable nor so suspicious as to give rise to an inference of illegal activity.

 In short, the trial court did not err in ruling that the facts do not support an articulable suspicion of criminal activity.[5]

## IV. STANDING

 Contrary to Justice Howe's opinion, the issue of defendant Schlosser's standing to assert a Fourth Amendment right of privacy in the interior of the vehicle and to move to suppress the controlled substance pursuant to the exclusionary rule is not before this Court and therefore need not be reached. Schlosser's standing was not challenged at trial, nor indeed has the State asserted this argument on appeal. Furthermore, the standing doctrine referred to by Justice Howe is not a jurisdictional doctrine. It is a substantive doctrine that identifies those who may assert rights against unlawful searches and seizures. *See* 4 W. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment,* § 11.3(e) (2d ed. 1987).

It is all but axiomatic that a claim of error cannot be raised for the first time on appeal. *State v. Loe,* 732 P.2d 115 (Utah 1987); *Lopez v. Shulsen,* 716 P.2d 787 (Utah 1986); *State v. Chancellor,* 704 P.2d 579 (Utah 1985). Such an issue ought not

---

**5.** If furtive gestures are coupled with prior reliable information indicating possible criminal conduct, further investigative action may be justified. *See United States v. Pajari,* 715 F.2d 1378 (8th Cir.1983) (officers knew that the defendant had been identified by four reliable informants as a major cocaine trafficker, that quantities of cocaine could be traced to his house, that he was to make a cocaine purchase that day, and

that a search warrant had been issued to search his residence); *People v. Jiminez,* 143 Cal.App.2d 671, 673, 300 P.2d 68, 70 (1956) (downward motion of a juvenile sitting with others in a car parked in an area where officers had been told by an informant to expect a gang fight involving weapons); *State v. Williams,* 371 So.2d 1074 (Fla.App.1979) (officers received a tip concerning the presence of a gun in the vehicle).

to be addressed by this Court when it has not even been raised by the parties, either here or in the court below.

Although a court's jurisdiction may be challenged at any time, even on appeal, Utah Rules of Criminal Procedure 12(b)(1); 1 C. Wright, *Federal Practice and Procedure: Criminal* § 193, at 693–94 (2d ed. 1982), standing to challenge the validity of a search under the Fourth Amendment is not jurisdictional. Since the issue of Schlosser's standing to challenge the officer's search has not been raised by the State, it has been waived and is not properly before us. *See Brown v. United States,* 411 U.S. 223, 230 n. 4, 93 S.Ct. 1565, 1569 n. 4, 36 L.Ed.2d 208 (1973); *State v. Goodman,* 42 Wash.App. 331, 334–35, 711 P.2d 1057, 1060 (1985); *State v. Grundy,* 25 Wash.App. 411, 415–16, 607 P.2d 1235, 1237 (1980).

## V. GOOD FAITH

 Finally, the State contends that even if the search was not based upon probable cause, it did not substantially violate Lowder's or Schlosser's Fourth Amendment rights because the officer acted in good faith. Therefore, the fruits of that search should not be suppressed. Utah Code Ann. § 77–35–12(g)(1) (1982). However, that provision has been held unconstitutional by this Court. *State v. Mendoza,* 748 P.2d 181 (Utah 1987). Officer Howard's actions do not fall within the ambit of the federal "good faith" exception because there was no objectively reasonable reliance on a magistrate's probable cause determination. *See United States v. Leon,* 468 U.S. 897, 922, 104 S.Ct. 3405, 3420, 82 L.Ed.2d 677 (1984). Furthermore, the trial court specifically held that Officer Howard did not act in good faith even under the lenient standard of § 77–35–12(g). Therefore, the evidence was properly excluded.

Affirmed.

DURHAM and ZIMMERMAN, JJ., concur.

HOWE, Associate Chief Justice: (dissenting).

I believe the trial court erred in finding that the opening of the passenger door by the officer was not in good faith and in ruling that such act was a substantial violation of defendants' fourth amendment rights. The arresting officer had his suspicions aroused when the passenger bent forward and leaned to the left and to the right after the officer stopped behind the suspect vehicle, which he had pulled over for speeding. Also suspicious was the driver's alighting from the vehicle with his license and registration in hand, meeting the officer before he could get out of his car. The passenger continued to make "furtive gestures" which looked to the officer as if he were trying to conceal something. After issuing the citation to the driver, the officer walked to the passenger side of the vehicle, knocked on the window, opened the door, and asked for identification. When the door was opened, the officer saw a bag of marijuana.

The majority holds that unless an officer can articulate reasons why a person's gestures and movements during a specific traffic stop differ from those of a person during other routine traffic stops, a search premised on those gestures and movements is based on a mere "hunch." The officer here did exactly what the majority would require of him. He articulated specific reasons why the observable behavior of both the driver and the passenger gave rise to suspicions of illegal activity. However, the majority explains away the officer's suspicions by listing possible innocent explanations for defendants' behavior. Many situations which arouse a reasonable suspicion in a trained officer may also have innocent explanations. When an officer can articulate objectively observable facts which, given his training and experience, arouse a suspicion of illegal activity, such should be sufficient to justify his reasonable effort to investigate the suspicious behavior.

The touchstone in all fourth amendment analyses should always be "the reasonableness in all the circumstances of the particular governmental invasion of a citizen's per-

sonal security." *Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889 (1968). Determining whether a particular act is reasonable calls for balancing the public interest and individuals' rights to personal security free from arbitrary interference by law officers. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578-79, 45 L.Ed.2d 607 (1975).

In the instant case, the intrusion occasioned by opening the door was minimal at best. The vehicle was already stopped for valid reasons. The officer had a suspicion founded on the observable actions of both the driver and the passenger that warranted his further investigation. His opening of the door to ask defendant for identification did not, under the circumstances, amount to an unreasonable search. The contraband in the door pocket was then in plain view, and the subjects were placed under arrest. The seizure of the remainder of the evidence was incident to a lawful, in-custody search. *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981).

I find no violation of defendants' rights under the fourth amendment, nor would I extend article I, section 14 of the Utah Constitution to prohibit the actions taken by the officer. Therefore, I would reverse the order of the lower court suppressing the evidence in question.

Even accepting the trial court's finding that the action of the officer was unreasonable, the order suppressing the evidence as to defendant Schlosser, the passenger in the vehicle, was clearly in error. The exclusionary rule is an attempt to effectuate the guarantees of the fourth amendment. *United States v. Calandra*, 414 U.S. 338, 347, 94 S.Ct. 613, 619, 38 L.Ed.2d 561 (1974). It is not a cloak to cover the misdeeds of those whose fourth amendment rights are not affected. *State v. Criscola*, 21 Utah 2d 272, 274, 444 P.2d 517, 519 (1968).

In *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the United States Supreme Court held that passengers had no expectation of privacy in a vehicle in which they were riding and that therefore evidence discovered in a search of the vehicle was admissible against them even though the search may have violated fourth amendment rights of someone else. Several other courts, including this Court, have arrived at the same conclusion, using the reasoning that the passenger simply lacked "standing" to challenge the validity of the search since no personal rights were violated. *State v. Constantino*, 732 P.2d 125 (Utah 1987) (per curiam); *State v. Valdez*, 689 P.2d 1334 (Utah 1984); *State v. Warren*, 121 Ariz. 306, 589 P.2d 1338 (1978); *State v. Heath*, 222 Kan. 50, 563 P.2d 418 (1977); *State v. Ribera*, 183 Mont. 1, 597 P.2d 1164 (1979); *see State v. Mustain*, 21 Wash.App. 39, 584 P.2d 405 (1978); *see also State v. Purcell*, 586 P.2d 441 (Utah 1978).

The majority is in error in evading the question of the standing of Schlosser. We have never required that issue to be raised by the parties in the trial court or in this Court. Only last month in *State v. Tuttle*, 106 Utah Adv.Rep. 6, 8, (April 12, 1989), we stated: "Standing is an issue that a court can raise *sua sponte* at any time." We cited in support *Society of Professional Journalists v. Bullock*, 743 P.2d 1166, 1169 (Utah 1987), and *Utah Restaurant Association v. Davis County Board of Health*, 709 P.2d 1159, 1160 (Utah 1985). In all three of those cases, lack of standing had not been raised by either party in the trial court or in this Court. Yet we *sua sponte* raised the question and dealt with it. Again, in *Terracor v. Utah Board of State Lands*, 716 P.2d 796, 798 (Utah 1986), we stated: "The parties have not raised or addressed the question of Terracor's standing to bring this petition to challenge the legality of the Land Board's lease. However, this Court may address that issue *sua sponte* " (citations omitted). The rule relied upon by the majority that a claim of error cannot be raised for the first time on appeal is applicable to the parties but has never stood in the way of this Court's noting lack of standing when it is apparent to us, as in the instant case.

Schlosser was merely a passenger in the vehicle. He asserted no rights of ownership or control, and he had no "expectation of privacy" in the interior of the vehicle, *Rakas*, 439 U.S. at 148, 99 S.Ct. at 433. Therefore, neither the opening of the door nor the resulting search of the vehicle violated his fourth amendment rights. Even assuming opening the door violated Lowder's rights, that is not grounds to exclude the evidence as to Schlosser. Fourth amendment rights are personal and cannot be asserted vicariously. *See Brown v. United States*, 411 U.S. 223, 230, 93 S.Ct. 1565, 1570, 36 L.Ed.2d 208 (1973).

Schlosser was represented by separate counsel and had moved to sever his trial from that of Lowder. Although both defendants joined in the motion to suppress, the court clearly should have denied the motion with respect to Schlosser. Failure to do so was error.

HALL, C.J., concurs in the dissenting opinion of Associate C.J. HOWE.