[Nos. 2429–2; 2397–2.  Division Two.  July 14, 1977.]

THE STATE OF WASHINGTON, *Respondent,* v. L. C. ISOM, ET AL, *Appellants.*

*Samuel J. Allotta* and *George W. Dixon,* for appellants.

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

PETRIE, C.J.—Defendants, L. C. Isom, Myrtle Lee Vaughn, and Brenda Faye Davis, were each convicted on three counts of possession of controlled substances with intent to deliver. On appeal, all three defendants raise the one issue that the evidence was insufficient to present the question of their guilt to a jury. They contend, therefore, that the trial court erred as a matter of law by denying their motions to dismiss the charges at the close of the case.

Under that assignment of error, we are required to review the evidence in the light most favorable to the State, allowing the State all reasonable inferences therefrom. *State v. Randecker,* 79 Wn.2d 512, 487 P.2d 1295 (1971); *State v. Braxton,* 10 Wn. App. 1, 516 P.2d 771 (1973).

The jury could well have found a state of facts most damaging to the claims of innocence of these defendants.

In the early morning hours of September 17, 1975, a group of 10 law enforcement officers from the Tacoma Police Department and the Pierce County Sheriff's Office, armed with a search warrant, approached a split–level house in the Lakewood district of the county. Defendant Vaughn, who was inside the house, observed some of the officers approaching the premises and shouted: "What in the hell are you doing here?" The officers heard shouting by persons inside the premises and detected the noises of people scurrying about. With that, the officers rushed to the front door, announced their identity and intentions, and kicked open the front door.

Inside the house, the raiding party found considerable quantities of heroin and cocaine, most of which analyzed out at a high percentage of purity, and some of which had been cut to a street level of purity. In addition, the officers found several 1–ounce medicine bottles of Robitussin A–C, a codeine preparation. On the first floor, leaning against the stairway, was a fully–loaded shotgun; underneath a bean-bag chair was a fully–loaded Smith and Wesson caliber .357 magnum revolver. In an upstairs bedroom, the officers found two women's purses bearing identification of defend-ants Vaughn and Davis connecting them with the premises raided. Each purse was slung over a bedpost on separate beds. In addition, defendant Isom's driver's license listed his address as the house which was raided, and one of his medical bills also bore the same address.

Several of the officers rushed up the stairway and attempted to enter the master bedroom. They were tempo-rarily blocked in that attempt by defendant Vaughn on the outside of the room and by another party (who subse-quently entered pleas of guilty to the same three counts of possession of controlled substances) who tried to keep the door closed from inside the bedroom.

When the officers finally broke into the master bedroom, they found defendant Isom between the bed and the bathroom. On and under the bed was an assortment of heroin, cocaine and assorted material and equipment used in cutting and packaging drugs, including several strips of crinkled but empty pieces of "tinfoil" scattered around the base of the toilet. Other, unopened packets of "tinfoil" contained contraband. Approximately 30 minutes after the raid began, defendant Davis was found fully dressed, crouched in the shower stall off the master bedroom. When Isom was arrested, he put on a jacket which he obtained from the closet in the master bedroom.

Quite obviously, there was substantial evidence to support the jury's verdict.

However, the defendants contend that no controlled substances were found on their persons, and evidence suggestive of their constructive possession is necessarily circumstantial. In addition, two women who were also in the house when the drugs were seized, testified that they— and not the three defendants—were the sole owners and possessors of the drugs which the police found. In addition, the two women testified that they—and not the three defendants—paid the rent and utilities for the premises and that, indeed, defendant Isom never lived at this house and defendants Vaughn and Davis moved out of the house a month before the raid. Further, these witnesses testified, defendant Davis simply conducted a business at this house as a dressmaker, seamstress, and tailor under the firm name of Styles.

The telephone listing in defendant Vaughn's name was explained by one of these witnesses. She testified that the telephone company had terminated service after difficulty with collecting costs of long distance calls and would not restore service, except upon a substantial deposit to cover long distance calls. This witness, who identified herself as a dancer and cocktail waitress, asked Vaughn to permit a listing in her name because, the witness stated, "I couldn't afford to do that."

Armed with this uncontradicted evidence of ownership and possession in other persons, the defendants contend that, as a matter of law, there was insufficient evidence to permit the jury to reach a guilty verdict. In support of that proposition, they direct our attention to the relatively recent case of *State v. Callahan*, 77 Wn.2d 27, 459 P.2d 400 (1969) wherein the court reversed a conviction of drug possession *as a matter of law* based on a failure of proof of constructive possession. In particular, the defendants direct our attention to the following passage:

> Evidence pointing to any dominion or control the defendant might have over the drugs was purely circumstantial and it is not within the rule of reasonable hypothesis to hold that proof of possession by the defendant may be established by circumstantial evidence when undisputed direct proof places exclusive possession in some other person.

*State v. Callahan, supra* at 31–32.

■■ The thrust of the defendants' contention, of course, is that direct proof of exclusive possession and control in another effectively negates, as a matter of law, any circumstantial evidence that the persons charged with the crime were also in possession of the contraband. If *Callahan* ever stood for that proposition, it is no longer the law in this jurisdiction. *State v. Gosby*, 85 Wn.2d 758, 539 P.2d 680 (1975). Indeed, a trial court may not weigh the evidence to determine whether the necessary quantum has been produced to establish some proof of an element of the crime; it may only test or examine the sufficiency thereof. *State v. Randecker, supra*. Whether or not the circumstantial evidence excludes every reasonable hypothesis consistent with the accused's innocence is no longer a relevant issue. It is only necessary that the trier of fact is convinced beyond a reasonable doubt that the defendant is guilty. *State v. Gosby, supra*. The scope of appellate review is limited to a determination of whether the State has produced substantial evidence tending to establish the circumstances from which the jury could reasonably infer the act

or acts to be proved. *State v. Boggs,* 80 Wn.2d 427, 495 P.2d 321 (1972).

Thus, the relatively dogmatic statement contained in *Callahan* and quoted above, has been weakened by the subsequent, definitive pronouncements of the Supreme Court. Indeed, we have previously confined our understanding of the quoted passage from *Callahan* to an expression that the reasonableness of any hypothesis of constructive possession based solely on circumstances is *particularly suspect* in the face of undisputed direct proof of exclusive possession in some other person. *State v. McCaughey,* 14 Wn. App. 326, 541 P.2d 998 (1975).

Based on those standards of appellate review, we must conclude that the trial court did not commit error by presenting the issue of the defendants' guilt to the jury.

As a final note, we observe that following their appeals, the defendants have presented an additional contention that they were denied a speedy trial as required by CrR 3.3. The record affirmatively reflects that all three defendants executed documents, witnessed by their respective counsel, specifically waiving any right to trial within 90 days. We find no error.

Judgment affirmed.

PEARSON and REED, JJ., concur.