[No. 2038–3. Division Three. March 16, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. RANDALL
CHARLES HAUSER, *Appellant.*

*Lawrence L. Shafer* and *Shafer, Mitchell & Moen,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

GREEN, J.—Defendant was convicted of unlawful possession of more than 40 grams of marijuana with intent to deliver in violation of RCW 69.50.401(a). He appeals.

Four issues are presented: (1) Was the affidavit sufficient to support the issuance of a search warrant? (2) Was it error to deny defendant's request for compulsory process to secure attendance of certain out–of–state witnesses at the suppression hearing? (3) Was an item not mentioned in the search warrant properly seized and admitted in evidence? and (4) Was the issue of defendant's possession of marijuana properly submitted to the jury? We affirm.

From the evidence presented, the jury could have found that on February 3, 1975, defendant approached Kevin Hrvatin at his home in Ellensburg. He asked Hrvatin to fly to Tucson, Arizona, at defendant's expense to pick up some suitcases allegedly containing leather and jewelry. Hrvatin agreed, receiving round–trip airline tickets and spending money. The next morning, defendant drove Hrvatin to the Yakima airport and gave him two large suitcases that appeared to be empty. When Hrvatin arrived in Tucson that afternoon, he was met by a man who exchanged the

two suitcases for two other full suitcases which Hrvatin took on his return to Yakima that evening.

Upon Hrvatin's arrival at the Yakima airport, he was met by the defendant and a young woman. After exchanging pleasantries, defendant said, "I'll go around and get the truck, and why don't you grab the suitcases." After Hrvatin and the young woman picked up the suitcases, they were apprehended by police officers as they approached the terminal exit doors. Defendant, who was about to reenter the terminal, observed the occurrence, turned around, and jumped into his car. An airport security guard pursued him and despite commands to stop, defendant sped from the parking lot. He was apprehended the next day.

Meanwhile, police officers took Hrvatin, the young woman and the suitcases to a room in the terminal where they opened the suitcase which was described in the search warrant. Inside they found 15 "kilo" bricks of a substance they recognized to be marijuana. Thereupon, they opened the second suitcase which was not described in the warrant and found similar contents. On this evidence, defendant was charged and convicted of possession of marijuana with intent to deliver.

First, defendant contends the search warrant was improperly issued because the affidavit was insufficient to establish probable cause that criminal activity was occurring. He argues that, at best, the affidavit contains nothing more than a mere declaration of suspicion and belief; and therefore, he contends it was error to admit into evidence the contents of the two suitcases. We disagree.

The search warrant issued was based solely upon the affidavit of Officer Vern Riddle of the Yakima Police Department and reads in pertinent part:

That your affiant believes that he has probable cause to believe that a controlled substance, marijuana, is being secreted within a black Samsonite brand suitcase, bearing Hughes Air West luggage tag number 03–62–52, which will arrive at the Yakima Airport at approximately 9:06 p.m. on Feb. 4, 1975.

The suitcase, black in color, is approximately 2–1/2 feet long, 6 inches thick, and 18" high. It contains no identification except the above mentioned tag number.

Said probable cause is based upon a telephone conservation [sic] had with one Lester Brown, who identified himself as a member of the airport security police at Tucson International Airport, Tucson, Arizona, on February 4, 1975 at approximately 4:30 p.m.

Officer Brown related that he has been a member of the security force for four years, and is experienced in checking and inspecting baggage for controlled substances.

That on this date at approximately 3:35 pm, MST, Officer Brown observed the above described bag fall from a conveyor belt. The bag emitted a significant amount of powder, believed by Officer Brown to be talcum powder. Inspection of the bag disclosed that it was heavy, approximately forty pounds, and did not appear to contain clothes.

Officer Brown stated that in his experience marijuana is very commonly transported in suitcases which contain loose talcum powder which distracts dogs from smelling the marijuana because it (the powder) gets into the nostrils of the dog.

Officer Brown stated that the bag appeared to contain a solid object.

 It is, of course, well established that an affidavit must contain more than a mere declaration of suspicion and belief; it must contain sufficient reliable underlying facts or circumstances to allow a magistrate to find probable cause to believe a crime has been committed. *United States v. Harris,* 403 U.S. 573, 29 L. Ed. 2d 723, 91 S. Ct. 2075 (1971); *Spinelli v. United States,* 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584 (1969); *United States v. Ventresca,* 380 U.S. 102, 13 L. Ed. 2d 684, 85 S. Ct. 741 (1965); *Aguilar v. Texas,* 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509 (1964); *State v. Patterson,* 83 Wn.2d 49, 515 P.2d 496 (1973); *State v. Biggs,* 16 Wn. App. 221, 556 P.2d 247 (1976). In *United States v. Ventresca, supra* at 108–09, the court prescribed the standard for determining the adequacy of information contained in affidavits:

If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants, . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

. . . Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. *Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.*

(Italics ours.) *Accord, State v. Patterson, supra* at 54. Our court in *State v. Harris,* 12 Wn. App. 481, 485, 530 P.2d 646, *review denied,* 85 Wn.2d 1010 (1975), also noted:

As our State Supreme Court perceptively observed while upholding an arrest for probable cause in *State v. Poe,* 74 Wn.2d 425, 429, 445 P.2d 196 (1968):

An officer of a narcotics detail may find probable cause in activities of a suspect and in the appearance of paraphernalia or physical characteristics which to the eye of a layman could be without significance. His action should not, therefore, be measured by what might or might not be probable cause to an untrained civilian passerby, but by a standard appropriate for a reasonable, cautious, and prudent narcotics officer under the circumstances of the moment.

(Citation omitted.) Similarly, magistrates issuing *a search warrant may draw commonsense inferences from the facts and circumstances contained in a supporting*

*affidavit, and their determinations of probable cause will be treated with deference by reviewing courts. State v. Patterson, supra; State v. Hodge, 5 Wn. App. 639, 490 P.2d 126 (1971).*

(Italics ours.) *See State v. Cabigas,* 5 Wn. App. 183, 185, 486 P.2d 1139 (1971).

Defendant argues that the affidavit merely discloses "innocent seeming activity and data" because talcum powder is not, in itself, indicative of the presence of marijuana and there is nothing in the affidavit to support the bare allegation that it is used to distract dogs from smelling marijuana.[1] We are not persuaded by this argument.

The affidavit contains information that Lester Brown of the Tucson airport security police was experienced in checking and inspecting baggage for controlled substances and that in his experience marijuana is commonly transported in suitcases containing loose talcum powder to distract dogs from detecting it. While the affidavit might have been more specific in delineating Mr. Brown's experience with respect to his statement regarding this commonly known use of talcum powder, the failure to do so is not fatal in the circumstances of this case.

It is, of course, common knowledge in today's society that dogs are used to "sniff-out" the presence of marijuana in luggage to be transported by air. Likewise, it is apparent

---

[1]Although defendant argued at the suppression hearing that the affidavit does not establish probable cause because the reliability of Mr. Brown is not set forth, this issue is not raised on appeal and is apparently conceded. This is understandable because Mr. Brown was an identified citizen informant and an eyewitness to the facts. His credibility is thereby established. J. Cook, *Constitutional Rights of the Accused, Pretrial Rights* § 37, at 238, cases cited in n.15 (1972). *See also United States v. Ventresca, supra* at 111, where the court held that "Observations of fellow officers of the Government engaged in a common investigation are plainly a reliable basis for a warrant applied for by one of their number." While the record does not establish Mr. Brown to be a fellow officer in a technical sense, he was a security officer charged with the duty of detecting controlled substances in baggage passing through the Tucson airport. Consequently, he was not only a citizen informer, but was also acting in a quasi-law enforcement capacity to the extent of lending credence to the information he transmitted to Officer Riddle in Yakima.

to law enforcement people that those engaged in such transportation have sought to frustrate the activity of dogs by the use of talcum powder. That such use is common knowledge to those engaged in detecting the presence of controlled substances was made evident by Justice Burger, writing in *United States v. Chadwick,* 433 U.S. 1, 53 L. Ed. 2d 538, 97 S. Ct. 2476 (1977). Although divided 7 to 2 on the question of whether a trunk emitting talcum powder could be searched incident to arrest, the court was unanimous in recognizing that the trunk was unusually heavy for its size and "was leaking talcum powder, a substance often used to mask the odor of marihuana or hashish." Moreover, the opinion indicates that the Court of Appeals for the first circuit found there was "probable cause to believe the footlocker [trunk] contained a controlled substance when they opened it." The Supreme Court, in effect, affirmed this determination *sub silentio,* but reversed on the basis that the trunk could not be searched incident to arrest. The error was in the failure of the officers to obtain a search warrant. Likewise, in *United States v. Jaime–Barrios,* 494 F.2d 455 (9th Cir. 1974), a border patrolman confirmed the common use of talcum powder to disguise the presence of marijuana. There the defendant conceded probable cause. It is apparent from these brief observations that those engaged in detection of controlled substances are aware that the presence of talcum powder usually indicates the presence of marijuana in the context of the circumstances of this case.

Viewing the totality of the facts contained in the affidavit in light of the standards set forth above, we find it sufficient to support the issuance of the search warrant based on the magistrate's determination of probable cause. Therefore, the trial court did not err in refusing to suppress the evidence obtained from the search pursuant to that warrant.

Second, defendant contends the court erred in refusing to grant a continuance and compulsory process to secure the

attendance at the suppression hearing of witnesses from Tucson. We find no error.

The gist of defendant's offer of proof in support of these motions was to secure evidence, if available, that Mr. Brown had in fact opened the suitcase in Tucson, discovering its contents. This contention is based upon the claim that the suitcase described in the search warrant was locked when Mr. Hrvatin delivered it to the airline in Tucson, but was unlocked at the time it arrived at the Yakima airport. In essence, defendant was seeking to discover evidence that would show there was an illegal search of some kind at the Tucson airport.

█ The difficulty with this position is that there is no claim that Officer Riddle misrepresented any fact in his affidavit. Therefore, defendant's contention must fail for the reasons stated in *State v. Goodlow*, 11 Wn. App. 533, 535–36, 523 P.2d 1204, *review denied*, 84 Wn.2d 1012 (1974), where the court said:

> The record before us reveals that the defense offered to show that the information given by an undisclosed informant to the affiant police officer was false or materially inaccurate, but failed to allege or make a sufficient showing that: (1) there was any misrepresentation by the police officer of a material fact, or (2) there was an intentional misrepresentation by the police officer, whether or not material. In the absence of such a showing, the trial court did not err in rejecting the offer of proof. The affidavit need only establish probable cause for making further police inquiry. It is only the probability of criminal activity and not a prima facie showing of it which represents the standard of probable cause.

Further, the denial of the motion for a continuance to secure out–of–state witnesses rested in the discretion of the trial court. *State v. Edwards*, 68 Wn.2d 246, 412 P.2d 747 (1966). We find no abuse of discretion in the circumstances of this case.

█ Third, error is assigned to admission of the contents of the second suitcase which was not mentioned in the search warrant. Defendant contends the search was illegal

as no consent was given, it was not incident to an arrest, and the contents were not in plain view. We find the court properly admitted the evidence as incident to a lawful arrest. While defendant might argue that only a detention of Mr. Hrvatin and the young woman occurred prior to the search of the first suitcase described in the warrant, it is clear that when the marijuana was discovered therein they were under arrest and were not free to go. One is under arrest from the moment he is not free to go. *State v. Byers,* 88 Wn.2d 1, 559 P.2d 1334 (1977). At that point, the search of the second suitcase in the custody of the two parties was proper. *See State v. Birdwell,* 6 Wn. App. 284, 492 P.2d 249 (1972), *review denied,* 80 Wn.2d 1009 (1972).

Finally, defendant contends the evidence was insufficient to show actual or constructive possession of the suitcases or knowledge of the contents. Consequently, he argues that the court erred in failing to dismiss the charge and in submitting the question of possession to the jury. We find no error.

■ Constructive possession, dominion and control over the two suitcases and the contents by defendant may be shown by circumstantial evidence. *State v. Callahan,* 77 Wn.2d 27, 459 P.2d 400 (1969); *see State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975). The evidence is clear that the defendant requested Mr. Hrvatin to travel to Tucson to pick up the suitcases and transport them to Yakima, paying all of the expenses. Defendant took Hrvatin to the airport and met him on the return flight. Mr. Hrvatin had no interest in the suitcases other than to bring them back to Yakima and deliver them to defendant. While defendant claims that all he knew was that the suitcases contained leather and jewelry, the jury was entitled to judge the credibility of that testimony. Therefore, the issue of constructive possession was supported by the evidence and properly submitted to the jury. *State v. Isom,* 18 Wn. App. 62, 567 P.2d 246 (1977).

Affirmed.

MUNSON, C.J., concurs.
MCINTURFF, J., concurs in the result.

Petition for rehearing denied April 19, 1978.

Review denied by Supreme Court October 20, 1978.