[No. 7732–9–II.   Division Three.   June 18, 1986.]

THE STATE OF WASHINGTON, *Respondent,* v. CLARA MAE WOOD, *Appellant.*

140

*David W. Warby* and *William M. Hamilton,* for appellant.

*William H. Griffies, Prosecuting Attorney,* and *Barbara L. Corey–Boulet, Deputy,* for respondent.

McINTURFF, J.*—Clara Wood appeals her jury convictions of first degree arson and first degree attempted theft.[1] The primary issue is whether sufficient evidence supports those convictions. We affirm.

Evidence at Mrs. Wood's trial indicated that at 3 a.m. on August 30, 1982, the Puyallup Fire Department responded to a fire alarm at 507 17th Street Northwest in Puyallup. The fire involved a vacant single family house owned by Mrs. Wood and her late husband. The fire had broken through the roof and had been burning for some time when the firemen arrived. Later investigation determined the fire was arson caused, started by a hand–held flame in the southwest corner of the living room of the residence.

---

*This appeal was heard by a panel of Division Three judges sitting in Division Two.

[1] Mrs. Wood's husband, Hubert Wood, also was convicted of these two crimes and likewise appealed, but he died prior to oral argument in this case.

Fire Marshal Richard Carman arrived at the scene at 3:10 a.m. Charles Blinkenderfer contacted him there and gave him the license number of a car driven by an individual he had seen leaving the area earlier. At trial, Mr. Blinkenderfer described how he had returned to his parents' home about 2 a.m. and observed a 1978 or 1979 model silver Toyota parked in a location where he normally did not see vehicles parked. When his dog started barking, a man carrying a sack and a stick ran out of some bushes to the car. Mr. Blinkenderfer unsuccessfully attempted to stop the man and ask him what was his business in the area. He then chased him for several miles but had to give up his pursuit because he was low on gas. Mr. Carman testified he checked the license number given to him by Mr. Blinkenderfer and found that it was registered to a 1979 silver Toyota owned by David Curtindale of Wenatchee.

That morning, Mr. Carman also spoke with John and Deanna Williams who lived next door to the burning house. They told him Mrs. Williams was Clara Wood's niece. Mrs. Williams identified David Curtindale as her uncle and Mrs. Wood's brother. Mr. Curtindale was arrested and charged with arson, and Mr. Blinkenderfer picked him out of a lineup as the individual who looked "most like" the man he had chased.

At the time of the fire, the Woods were vacationing in Reno. Telephone company records indicated two collect phone calls from Reno had been made to Mr. Curtindale's residence the day before the fire. Mr. Curtindale's neighbor testified she returned home August 30 at about 3:30 or 4 a.m. and Mr. Curtindale's car was not in his driveway.

The State also presented evidence that the Woods owed $8,000 to a house mover who had transported the house in question to the lot in Puyallup where it burned. Puyallup's building inspector testified he had inspected the house prior to the fire and had informed the Woods of 13 deficiencies that had to be corrected before the house met building code requirements. In a letter to the Woods, he estimated the cost of these improvements at $12,500.

The Woods submitted a claim for a $95,000 loss to their insurer, and Mrs. Wood supported that with testimony. They had insured the house for $75,000 replacement cost, but the insurer appraised it after the fire at $25,000. The appraiser hired by the insurer estimated market value to be $45,000 to $46,500. However, he deducted from that sum $24,500 as the expenses the Woods would have incurred in bringing the house up to code.

In her case, Mrs. Wood presented evidence of several specific houses she and her husband had moved and restored over the years. She testified the house in question had no more substantial problems than these others. She also stated that they already had made many of the repairs called for by the building inspector, and it would have cost only between $6,000 and $8,000 to finish the house.

Outside the presence of the jury, the prosecutor argued strenuously that the court should allow cross examination as to other houses the Woods or their extended family had owned which had burned. The court ruled:

> [T]hese other fires were not relevant in point of time, and . . . even if they were . . ., the prejudicial value would outweigh the probative value. . . . These defendants had never been charged in connection with those fires occurring, one was 8 years ago, and the other was 9 years ago, and Mr. Hamilton, in his examination, did not get into those matters.

Nevertheless, during the prosecutor's questioning of Mrs. Wood, defense counsel was forced to object twice when the prosecutor asked about "other houses" the Woods had owned.[2] Earlier, the prosecutor had objected to the admis-

---

[2]The transcript of Mrs. Wood's trial reads:

"Q. THE PROSECUTOR: These don't represent all the houses you've had, do they?

"MR. HAMILTON: Objection, Your Honor, . . . the Court has previously ruled specifically on this . . .

"THE COURT: The objection is sustained.

" . . .

"Q. About how many other houses have you had besides—

"MR. HAMILTON: Objection . . .

sion of a chart showing what the Woods had done to renovate the homes Mrs. Wood testified about on direct examination. He commented: "The only way I wouldn't object would be if I were permitted to ask her about the other houses."

Mrs. Wood explained the phone calls to her brother David. She stated she was very close to her brother, and that they telephoned him twice on August 29 before reaching him to advise him they were in Reno, despite the fact it earlier had appeared they would have to cancel their trip.

Mrs. Wood took issue with the evidence linking Mr. Curtindale to the arson. Cross examination of Mr. Blinkenderfer brought out he had been drinking the evening of the fire and had originally described the individual he followed as being over 6 feet tall. Mr. Curtindale is 5 feet 8 inches. Also, Mrs. Wood presented the testimony of a gas station attendant who spoke with Mr. Blinkenderfer early on the morning of August 30 and recalled Mr. Blinkenderfer mentioning that the license number of the car he had followed began with the letters "IVT" or "ICT", not "KDA" as he allegedly reported to Mr. Carman.

Mrs. Wood's theory was that Mr. Blinkenderfer knew only enough of the license number of the car he had chased to link it to a Wenatchee registration and that Mr. Carman then elicited from Mrs. Williams the name of a family member living in Wenatchee. When he obtained Mr. Curtindale's name, he checked with the Department of Motor Vehicles and found he owned an automobile similar to the one described by Mr. Blinkenderfer. However, Mr. Carman maintained he did not talk to Mrs. Williams until *after* he received the information that the license number reported to him by Mr. Blinkenderfer was registered to Mr. Curtindale's car.

Mrs. Wood also attempted to impeach Mr. Carman's testimony by bringing out he had disobeyed an express court

---

"THE COURT: Sustained.
"[Sidebar conference]"

order and discussed the arson case with a witness over lunch and drinks, with the knowledge of the prosecutor. The witness was Mr. Curtindale's neighbor, who had testified on behalf of the State. She told the jury Mr. Carman told her the case was lost, but he had accomplished what he had set out to do, *i.e.,* guarantee the Woods never again obtained insurance.

The jury returned verdicts of guilty to the charges.

■ First, are the convictions supported by sufficient evidence? The standard of review of a challenge to the sufficiency of the evidence to support a criminal conviction is set forth in *State v. Green,* 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979)):

> [T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any rational trier of fact* could have found the essential elements of the crime *beyond a reasonable doubt.*"

Under the *Green* standard, the testimony of Mr. Blinkenderfer and Mr. Carman, the evidence of the Woods' phone calls to Mr. Curtindale, and the amount of work necessary to complete the house, were sufficient to support Mrs. Wood's first degree arson conviction.[3] The foregoing, in conjunction with the evidence that the Woods submitted an insurance claim, is sufficient to support the first degree attempted theft conviction.[4]

■ Mrs. Wood's theory of her innocence was dependent on the jury rejecting the testimony of both Mr. Carman and

---

[3]RCW 9A.48.020 reads:

"(1) A person is guilty of arson in the first degree if he knowingly and maliciously:

"(a) Causes a fire or explosion which is manifestly dangerous to any human life, including firemen;"

[4]RCW 9A.56.020(1) states:

"'Theft' means:

". . .

"(b) By color or aid of deception to obtain control over the property or services of another . . . with intent to deprive him of such property or services . . ."

Mr. Blinkenderfer that they had the license number first, then traced it to Mr. Curtindale. Instead, the jury, whose province it is to judge the credibility of the witnesses, accepted this testimony. *State v. Smith,* 31 Wn. App. 226, 228, 640 P.2d 25 (1982). The court's language in *State v. Isom,* 18 Wn. App. 62, 66–67, 567 P.2d 246 (1977) is helpful in answering Mrs. Wood's contentions here:

> Whether or not the circumstantial evidence excludes every reasonable hypothesis consistent with the accused's innocence is no longer a relevant issue. It is only necessary that the trier of fact is convinced beyond a reasonable doubt that the defendant is guilty. The scope of appellate review is limited to a determination of whether the State has produced substantial evidence tending to establish the circumstances from which the jury could reasonably infer the act or acts to be proved.

(Citations omitted.) *See also United States v. Miller,* 688 F.2d 652, 663 (9th Cir. 1982).

Second, did the court err in denying Mrs. Wood's motion for a new trial based on the prosecutor's alleged misconduct? Mrs. Wood argues the jury could have inferred she and her husband had been involved in other arsons, based on (1) the prosecutor's attempts to question her about "other houses" they had owned, and (2) the testimony concerning Mr. Carman's observation to the witness that he had accomplished his purpose of guaranteeing the Woods never again obtained insurance.[5] We disagree.

Prosecutorial misconduct denies a defendant a fair trial and requires reversal of his conviction if there is substantial likelihood that the comments affected the verdict. *State v. Reed,* 102 Wn.2d 140, 684 P.2d 699 (1984); *State v. Traweek,* 43 Wn. App. 99, 108, 715 P.2d 1148 (1986). Here, the prosecutor's questioning did not refer directly to the fact these "other houses" owned by the Woods had burned.

---

[5] In her brief, Mrs. Wood alleges the prosecutor, in his opening statement, promised evidence that he did not later produce. We could not find in the record where she had urged this conduct as a ground for new trial; hence, we do not consider it.

It was probably obvious to the jurors that the prosecutor wanted to question Mrs. Wood about these other houses, but they had no way of knowing why, and it was not evident from the context of the questioning. Nor was it evident from Mr. Carman's comment to the witness over lunch. Without this link there exists no substantial likelihood the conduct affected the verdict.

Thus, we hold the Superior Court did not err when it denied Mrs. Wood a new trial based on prosecutorial misconduct. But this holding should not be construed as condoning the prosecutor's comments. His questions and reference to "other houses" the Woods had owned appear to be intentional violations of the Superior Court's ruling in limine that this evidence was inadmissible. The prosecuting attorney, as a public official and an officer of the court, is expected to conduct him or herself in an exemplary manner. The conduct here, while not sufficient to be reversible error, does not meet this standard.[6]

The judgment of the Superior Court is affirmed.

THOMPSON, J., concurs.
GREEN, C.J., concurs in the result.

Review denied by Supreme Court October 29, 1986.

---

[6]Rule of Professional Conduct 3.4 provides in part:
" A lawyer shall not:
" . . .
"(c) Knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists;"