[No. 19729-8-III.   Division Three.   June 6, 2002.]

THE STATE OF WASHINGTON, *Respondent*, v. LEITON L. ZUNKER, *Appellant*.

*Arthur J. Bieker*, for appellant.

*Andrew K. Miller, Prosecuting Attorney*, and *Terry J. Bloor, Deputy*, for respondent.

Sweeney, J. — A jury found Leiton L. Zunker guilty of one count of possession of methamphetamine with intent to deliver and one count of manufacturing methamphetamine. Mr. Zunker challenges the sufficiency of the evidence of intent to deliver on the grounds that the quantity of methamphetamine he possessed—two grams—was not enough to deliver. And while that may be true, we conclude that the evidence is sufficient here to support an intent to deliver when we consider other evidence, including ingredients to make methamphetamine, scales, and notebooks with names and numbers.

Mr. Zunker also challenges the manufacturing conviction on grounds that evidence of possession of most of the ingredients does not constitute "preparation" of the substance—one statutory definition of manufacture. RCW 69.50.101(p). "Preparation" in this statutory scheme means combining or otherwise starting the process of making methamphetamine. Here, he had most of the implements to manufacture and ground-up cold pills—the start of the process for preparation of methamphetamine. We therefore affirm his conviction on both counts.

## FACTS

The police stopped Mr. Zunker because they thought that the car he was driving was stolen. They ordered him out of the car and patted him down. They found a vial containing two grams of methamphetamine in his pants pocket. They then arrested him and searched his car.

They found several bottles of cold pills in a black bag on the front floorboard and another bottle on the back seat. The bag also contained a significant amount of ground-up cold pills. A small scale with methamphetamine residue on it was found in another bag in the car. Two small notebooks

with names and phone numbers were also found. One of the notebooks had credit card numbers. At this point, the officers suspected a mobile meth lab. They asked for and received Mr. Zunker's consent to search the trunk.

The trunk contained a large tank with "anhydrous ammonia" stamped on the side. The tank was empty except for trace amounts of anhydrous ammonia.

Mr. Zunker was charged with manufacture of methamphetamine, or in the alternative, possession of ephedrine or pseudoephedrine with intent to manufacture methamphetamine. He was also charged with possession of a controlled substance with intent to deliver, or in the alternative, unlawful possession of a controlled substance, methamphetamine.

Mr. Zunker and passenger, Jeri McPherson, were tried together before a jury.

Detective Terry Boehmler of the Tri-City Metro Drug Task Force testified that he had worked on the task force for a year and one-half. He received on-the-job training and training from the Drug Enforcement Agency. He continued to attend conferences on current trends in combating meth labs. He had also participated in investigating 40 to 60 meth labs in the first half of 2000 alone.

Detective Boehmler explained the significance of the physical evidence. He testified that people grind up cold pills for only one reason—to extract pseudoephedrine to make meth. Detective Boehmler testified that anhydrous ammonia is another ingredient of meth. He testified the only ingredient Mr. Zunker was missing was lithium. He had investigated a number of meth labs where one or more of the essential ingredients was not found.

Mr. Zunker's defense was unwitting possession. He said he borrowed the car from a friend. He helped load the ammonia tank into the trunk. But he denied knowing anything else about it and knew nothing about the other items found in the car. Ms. McPherson said she owned the scales but used them only to buy meth for her own use.

Mr. Zunker was convicted of manufacture of a controlled substance and possession of a controlled substance with intent to deliver.

## SUFFICIENCY OF EVIDENCE

Mr. Zunker points to the lack of direct evidence that he sold or intended to sell anything. He argues that the two grams police found are more consistent with personal use than with an intent to deliver.

STANDARD OF REVIEW

■ Evidence is sufficient to support a jury verdict if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Campos*, 100 Wn. App. 218, 222, 998 P.2d 893, *review denied*, 142 Wn.2d 1006 (2000); *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980). All reasonable inferences are drawn in favor of the verdict and interpreted most strongly against the defendant. *State v. Gentry*, 125 Wn.2d 570, 597, 888 P.2d 1105 (1995).

■ Mr. Zunker argues that the circumstantial evidence must not only be consistent with the hypothesis of guilt but also inconsistent with any reasonable hypothesis of innocence. *See, e.g., State v. Sewell*, 49 Wn.2d 244, 246, 299 P.2d 570 (1956). This was the law in Washington at one time, but it is no longer the rule. Washington follows the federal rule that circumstantial evidence need not be inconsistent with any hypothesis of innocence. *State v. Gosby*, 85 Wn.2d 758, 764-65, 539 P.2d 680 (1975). It need be sufficient only to convince a reasonable jury of guilt beyond a reasonable doubt. *Id.* at 766-67; *State v. Kovac*, 50 Wn. App. 117, 119, 747 P.2d 484 (1987).

INTENT TO DELIVER

■ Possession of a controlled substance, standing alone, is not sufficient to support an inference of intent to deliver, even if the amount is greater than is deemed usual for personal use. *Campos*, 100 Wn. App. at 222 (citing *State v.*

*Lopez*, 79 Wn. App. 755, 768, 904 P.2d 1179 (1995)). Some additional factor must be present. *Campos*, 100 Wn. App. at 222 (citing *State v. Hutchins*, 73 Wn. App. 211, 216, 868 P.2d 196 (1994)).

A large amount of cash is one such factor. *Campos*, 100 Wn. App. at 223. So is paraphernalia—scales, cell phones, address lists, and the like. *Id.* at 223-24 (citing *State v. Brown*, 68 Wn. App. 480, 482, 484-85, 843 P.2d 1098 (1993)).

Mr. Zunker had $220. By itself, this might not be enough. But he also had scales bearing meth residue, notebooks with names and credit card numbers, a cell phone battery, and meth ingredients. And the key to the trunk (containing the anhydrous ammonia tank) was in his wallet.

Numerous Washington cases hold that an inference of intent to deliver requires at least one factor indicative of distribution *in addition* to a large quantity of drugs. *See, e.g., State v. Hagler*, 74 Wn. App. 232, 236, 872 P.2d 85 (1994). We do not read this to mean that a large quantity of drugs is an essential requirement, only that some additional factor suggestive of sale is required for corroboration. *Id.*; *Brown*, 68 Wn. App. at 485. The question is whether, when other factors indicate sales activity, some minimum quantity of drugs is necessary to support a finding of intent to deliver. This is an issue of first impression in Washington. Previous decisions addressing the sufficiency of evidence of trafficking assume a large quantity of drugs. *See, e.g., Brown*, 68 Wn. App. at 484 and cases cited.

We have declined to find intent to deliver in the absence of anything to deliver. *State v. Todd*, 101 Wn. App. 945, 954, 6 P.3d 86 (2000). In *Todd*, the defendant's fingerprints on various items containing drug residue supported a finding of possession. But the quantity of residue was too small to deliver. Here, the amount of drugs was arguably sufficient for one or two sales. Detective Boehmler testified that the smallest unit of methamphetamine sold is one gram. Most users buy 1.8 grams—a "teener"—or two teeners for personal use.

Other courts have affirmed convictions for intent to deliver where the quantity of drugs was more consistent with personal use.

Virginia routinely upholds such convictions. *See, e.g., Hussen v. Commonwealth*, 257 Va. 93, 101-02, 511 S.E.2d 106, 109 (1999) (Poff, J., dissenting); *White v. Commonwealth*, 24 Va. App. 234, 242-43, 481 S.E.2d 486, 490, *aff'd on reh'g*, 25 Va. App. 662, 492 S.E.2d 451 (1997); *Stanley v. Commonwealth*, 12 Va. App. 867, 869, 407 S.E.2d 13, 14 (1991). The court reasons that the jury is entitled to weigh all the circumstances and may infer from them an intent to deliver "even though the quantity of drugs seized is consistent with personal use." *Stanley*, 407 S.E.2d at 15, *cited in Dunbar v. Commonwealth*, 29 Va. App. 387, 394, 512 S.E.2d 823, 826 (1999).

Pennsylvania also upholds such convictions. *Commonwealth v. Ariondo*, 397 Pa. Super. 364, 384, 580 A.2d 341, 351 (1990). The small amount of controlled substances is "but one of many factors to be considered in determining whether possession was for sale or delivery, or for personal use." *Commonwealth v. Ramos*, 392 Pa. Super. 583, 595-96, 573 A.2d 1027, 1034 (1990).

In a federal prosecution for distributing two packages containing 1.7 and 2.7 grams of cocaine, the type of packaging and other circumstances were sufficient to support a jury inference that the cocaine was intended for distribution. A jury could reasonably believe drugs were for sale even though the defendant's stock of the substance happened to be low. *United States v. James*, 494 F.2d 1007 (D.C. Cir. 1974).

Florida courts hold that the amount of drugs supporting an inference of intent to deliver is a factual question for the jury. *Fluellen v. State*, 703 So. 2d 511 (Fla. Dist. Ct. App. 1997); *Gamble v. State*, 644 So. 2d 1376 (Fla. Dist. Ct. App. 1994).

This collection of decisions is helpful here. The jury was entitled to look at all the evidence presented and draw its

own conclusion about whether Mr. Zunker intended to sell meth. The quantity of drugs alone is not sufficient to establish intent to distribute. But the fact that the amount of drugs is small should also not invalidate a jury verdict, provided corroborating circumstances are present.

The evidence here does not exclude every reasonable hypothesis consistent with innocence, but it does not need to. It meets the *Green*[1] standard for sufficiency. *Kovac*, 50 Wn. App. at 119. That is, it is sufficient to convince a reasonable jury beyond a reasonable doubt that the defendant is guilty. *State v. Wood*, 44 Wn. App. 139, 145, 721 P.2d 541 (1986).

## MANUFACTURING

Mr. Zunker argues that the methamphetamine precursors found in his possession might support a conviction of possession of ephedrine or pseudoephedrine with intent to manufacture. RCW 69.50.440. But he contends they do not prove actual manufacture.

The State's witnesses testified that the manufacture of methamphetamine requires more than pseudoephedrine and anhydrous ammonia. It also requires: lithium or a similar alkali metal; rock salt; two kinds of solvent, either toluene or denatured alcohol, and an oil-based solvent, acetone or ether; a hydrochloric acid gas generator, usually a large mason jar with tubes coming out of it; a large mixing vessel; coffee filters; and a heat source—not essential, but usual for drying the filters.

And we recently affirmed a manufacturing conviction where the police seized a flask, two glass jars, and a three-liter separatory funnel. *Todd*, 101 Wn. App. at 948-49. The flask contained residue of red phosphorus (a lithium substitute). One jar contained another precursor as well as methamphetamine in an intermediate liquid form that would be converted into powder for use. The funnel contained a chemical by-product of meth manufacture. *Id.*

---

[1] *Green*, 94 Wn.2d at 221.

Here, Mr. Zunker had ground-up cold pills and an anhydrous ammonia tank.

■ We give the plain language of criminal statutes their literal and strict interpretation. *State v. Wilson*, 125 Wn.2d 212, 216-17, 883 P.2d 320 (1994). Chapter 69.50 RCW defines the manufacturing as "the production, preparation, propagation, compounding, conversion, or processing of a controlled substance." RCW 69.50.101(p).

■ The meth, the scale, and the partially empty anhydrous ammonia tank raise a permissible inference that some manufacturing had already taken place.

And he also had pseudoephedrine in the form of ground-up pills. Grinding such "pill powder" is a preparatory step to the meth "cooking" process. *Smith v. State*, 68 Ark. App. 106, 110, 3 S.W.3d 712, 714 (1999). Just about all that was needed to process a new batch of meth was more anhydrous ammonia, lithium, and a few other components. This evidence raises a reasonable inference that Ms. McPherson and Mr. Zunker were arrested while preparing to make a new batch of meth.

From the foregoing evidence a reasonable juror could conclude beyond a reasonable doubt that Mr. Zunker produced methamphetamine. RCW 69.50.101(p). Accordingly, the evidence was sufficient to support his conviction for manufacture.

## EXPERT ON METHAMPHETAMINE LABS

Mr. Zunker contends that Detective Boehmler was not qualified to give expert opinions on the manufacture or sale of meth.

Detective Boehmler described his background in meth lab investigations. The prosecutor then asked:

Q. Are you basically the resident expert on meth labs?

A. Yes, I am.

[MR. ZUNKER'S COUNSEL]: Your Honor, I object to the individual characterizing himself as an expert.

> Q. (By [the prosecutor] continuing): Well, with Metro, do they look to you as the expert with regard to meth labs?
>
> A. Yes, they do.
>
> Q. Have you given trainings for other police officers with respect to meth labs?
>
> A. Yes, I have for the West Richland Police Department and the Kennewick Police Department.
>
> Q. And have you continued your education with respect to meth labs?
>
> A. Yes, I have. In fact, last week I attended a two-day course for recertification on meth labs.

Report of Proceedings at 159-60.

■ The decision to qualify a police detective as an expert is within the sound discretion of the trial judge. We will not disturb those decisions absent a clear showing of abuse of that discretion. *State v. Liles*, 11 Wn. App. 166, 169, 521 P.2d 973 (1974). Mr. Zunker contends, nevertheless, that the court's failure to state on the record its grounds for admitting Detective Boehmler's expert opinions proves that the court never considered his qualifications and this was an abuse of discretion.

An abuse of discretion occurs when the trial court bases its decision on untenable grounds or exercises discretion in a manner that is manifestly unreasonable. *State v. Valdobinos*, 122 Wn.2d 270, 279, 858 P.2d 199 (1993).

■ Here, the court did not rely solely on the witness's claim that he was an expert. The prosecutor backed up Detective Boehmler's statement by showing that Detective Boehmler had received on-the-job training as well as Drug Enforcement Agency training and continuing education. He testified that he had participated in the investigation of 40 to 60 meth labs that year alone (it was August 1).

The trial court did not abuse its considerable discretion by qualifying Detective Boehmler as an expert.

We affirm both convictions.

KURTZ, J., concurs.

SCHULTHEIS, J. (dissenting) — Although a close call, I agree with the majority's decision there was sufficient evidence in the record to support the intent to deliver conviction. However, I find insufficient evidence of manufacture of methamphetamine and would reverse that conviction.

In my opinion, even viewing the evidence in the light most favorable to the State, no rational trier of fact could have found on the facts and instructions presented that Leiton Zunker was guilty of manufacturing methamphetamine. The term manufacture was defined in jury instruction 12: "Manufacture means the production, preparation, propagation, compounding, conversion, processing, directly or indirectly, of any controlled substance." Clerk's Papers (CP) at 36. Jury instruction 14 stated:

> To convict the defendant, Leiton L. Zunker, of the crime of manufacture of a controlled substance as charged in Count I of the Information, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about April 19, 1999, the defendant manufactured a controlled substance or was an accomplice to one who manufactured a controlled substance;
>
> (2) That the defendant knew that the substance manufactured was a controlled substance, methamphetamine, and
>
> (3) That the said act or acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.
>
> On the other hand, if, after weighing all of the evidence, you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

CP at 38.

The events of the circumstances leading to Mr. Zunker's arrest were presented to the jury by officers who were

present at the scene on the date in question. Detective Terry Boehmler, a member of the Tri-City Metro Drug Task Force, explained to the jury in great detail how methamphetamine is manufactured utilizing the Nazi method. He explained each ingredient (and possible substitutes) as well as the chemical solvents and cookware needed to prepare a batch of methamphetamine. He explained the street term "cook" meant to mix the necessary ingredients together to create the illegal drug. Report of Proceedings (RP) at 171-72. Vital to my decision is Detective Boehmler's uncontested testimony that no evidence of a methamphetamine "cook" was found in the vehicle Mr. Zunker was driving on the date in question. RP at 190-91. Nevertheless, the majority is satisfied that the presence of extracted pseudoephedrine and an empty anhydrous ammonia tank in the vehicle at the time of the traffic stop was sufficient evidence of manufacture of methamphetamine. I respectfully disagree.

A passenger in the vehicle claimed ownership of the bag in which the extracted pseudoephedrine was found. Mr. Zunker testified he had borrowed the car from a friend. Although he admitted placing the empty ammonia canister in the trunk of the vehicle, he did not claim any ownership of it. Mr. Zunker fully cooperated with the officers at the scene. He even willingly opened the trunk of the vehicle for them. Unlike the evidence gathered and considered by the *Todd*[2] court, here the officers found only one ingredient in the vehicle that was even applicable in the manufacture of methamphetamine. At most, this record provides evidence that Mr. Zunker may have been *preparing* to prepare the illegal substance. Because this activity is not included in the definition of manufacture found in the jury instruction, the first two elements in the "to convict" jury instruction cannot be proven beyond a reasonable doubt. Accordingly, I cannot endorse the jury's finding of guilt on the manufacturing charge.

Review denied at 148 Wn.2d 1012 (2003).

---

[2] *State v. Todd*, 101 Wn. App. 945, 6 P.3d 86 (2000).