[No. 30638-7-II.   Division Two.   March 1, 2005.]

THE STATE OF WASHINGTON, *Respondent*, v. DAVID ALAN NUSBAUM, *Appellant*.

*Richard J. Troberman* (of *Richard J. Troberman, P.S.*), for appellant.

*Russell D. Hauge, Prosecuting Attorney*, and *Timothy A. Drury, Deputy*, for respondent.

¶1 ARMSTRONG, J. — David Alan Nusbaum pleaded guilty to felony possession of a controlled substance, flunitrazepam. On the day he was arrested, officers searched his residence under a warrant and seized several firearms. Nusbaum sought the return of his firearms,

arguing that the search warrant was invalid because the issuing magistrate authorized it only on the condition that the controlled substances were delivered and taken into the home, and this never occurred. Nusbaum appeals the trial court's denial of his motion to return the firearms. We reverse, holding that the warrant was anticipatory or conditional, and the condition was never met.

## FACTS

¶2 In February 2003, United States Customs Inspectors in Miami, Florida intercepted a package sent from Lima, Peru, that was addressed to David Nusbaum at his residence on Bainbridge Island, Washington. Customs officers opened the package and found 120 flunitrazepam tablets. Flunitrazepam is a Schedule IV controlled substance in Washington. WAC 246-887-170.

¶3 Customs turned the package over to WestNET[1] Detective Will Sapp, who then applied for a warrant to search Nusbaum's residence. In the complaint for search warrant, Sapp stated that WestNET detectives intended to use a field supervisor from the shipping company to make a controlled delivery of the package containing the pills to Nusbaum's residence. Sapp stated that before delivery, WestNET would have a technician install a radio device in the package. The device was designed to emit a tone that would speed up when the package was opened. Sapp explained that WestNET detectives would monitor this tone and once the package was opened, they would serve the warrant on the residence.

¶4 Sapp also asked permission to serve the warrant even if the package was not opened in a timely manner or if there was a technological malfunction. In addition, he asked permission to serve the warrant if "the utilization of the installed device is not practical due to equipment malfunction during or after the installation of the device." Ex. 1 at 3. Nevertheless, he stated that "the warrant would only be

---

[1] West Sound Narcotics Enforcement Team.

served, provided that the package containing the flunitrazepam is delivered to the residence ... and [is] accepted by David Nusbaum or another unknown person at the residence acting on his behalf." Ex. 1 at 3.

¶5 Sapp opined that "[b]ased upon the facts listed in this affidavit, your affiant has probable cause to believe, and does, in fact, believe, that there is evidence, fruits, and/or instrumentalities of violations of the Uniformed Controlled Substances Act in and on the premises and/or vehicles" at Nusbaum's property. Ex. 1 at 3. Sapp also requested permission to search for weapons and ammunition, among other enumerated items, including papers and records related to the sale, ordering, transporting, purchase, possession, and distribution of flunitrazepam. The judge signed the warrant authorizing a search of Nusbaum's residence.

¶6 The issued warrant did not state that it was an anticipatory or contingent warrant; it did not state that it could be served only if the pills were delivered and accepted; and it did not describe the controlled delivery plan that Sapp outlined in the complaint. Instead, it authorized an immediate search of Nusbaum's residence based on probable cause that there was "evidence, fruits, and/or instrumentalities" of a violation of the Uniformed Controlled Substances Act (chapter 69.50 RCW) at his house, and that evidence was "presently being kept, stored, or possessed" on or about the premises. Ex. 2 at 1.

¶7 A few days later, a detective from WestNET dressed as a delivery person arrived at Nusbaum's residence and met Nusbaum on the front porch. Nusbaum testified that he signed for the package without having seen it first. The officer then started to hand the package to Nusbaum but, according to Nusbaum, as soon as his fingers touched the package, the detective "yanked it back, said he needed to get a receipt on the ground, which was about 30 feet away from the front door of the house." Report of Proceedings (RP) at 22. Nusbaum followed him to retrieve the receipt, at which time several Special Weapons and Tactics (SWAT)

agents jumped out from behind the bushes. Nusbaum never opened the package or took it inside his residence. Officers arrested Nusbaum outside his residence. The officers served the warrant, searched the residence, and found additional pills of flunitrazepam, "a fair size quantity of marijuana," several rifles, and a couple of handguns. RP at 10. (Nusbaum informs us that police confiscated 22 firearms total: 14 rifles and shotguns and 7 handguns.[2])

¶8 Later, Nusbaum pleaded guilty to one count of possession of a controlled substance (flunitrazepam). Then Nusbaum moved under CrR 2.3(e) for return of the firearms seized during the search of his residence. The State moved for forfeiture of the firearms. After a hearing, the court denied Nusbaum's motion and granted the State's motion to forfeit the firearms. The court found that the package was "delivered" to the residence, that Nusbaum "accepted" it on the front steps of his home, and that probable cause supported the warrant. Clerk's Papers (CP) at 21. The court also ruled that because the firearms were inside his home and he was arrested "on the steps" of his house, Nusbaum possessed and controlled the weapons for purposes of RCW 9.41.098.[3] CP at 20.

## ANALYSIS

¶9 Nusbaum contends that the search warrant violated the fourth amendment to the United States Constitution and article I, section 7 of the Washington Constitution because probable cause was conditioned on delivery and acceptance of the package. He argues that the conditions were not ultimately satisfied and that probable cause was never triggered because the drugs were never brought into

---

[2] The numbers are from the Appellant's brief.

[3] RCW 9.41.098(1)(d) authorizes the court to order forfeiture of a firearm that is possessed by or under the control of a person when he commits or is arrested for committing a felony.

the house; as a result, the firearms were illegally seized and should be returned to him.[4]

## I. Standard of Review

¶10 Under the United States Constitution, a search warrant is invalid unless it is supported by probable cause. U.S. CONST. amend. IV. And article I, section 7, of the Washington Constitution provides that "no person shall be disturbed in his private affairs, or his home invaded, without authority of law."

## II. Search Warrant

¶11 A search warrant application must state the underlying facts and circumstances on which it is based. *State v. Thein*, 138 Wn.2d 133, 140, 977 P.2d 582 (1999) (citing *State v. Smith*, 93 Wn.2d 329, 352, 610 P.2d 869 (1980); *State v. Helmka*, 86 Wn.2d 91, 92-93, 542 P.2d 115 (1975)). Probable cause exists if the affidavit supporting the warrant presents facts sufficient for the issuing magistrate to reasonably infer that criminal activity is occurring or that contraband exists at the place to be searched; thus, we look for a nexus between the criminal activity or contraband and the place to be searched. *See In re Pers. Restraint of Yim*, 139 Wn.2d 581, 594, 989 P.2d 512 (1999) (citing *State v. Cole*, 128 Wn.2d 262, 268, 906 P.2d 925 (1995)); *Thein*, 138 Wn.2d at 140. An officer's unsupported conclusions or speculations are not enough. *Thein*, 138 Wn.2d at 145-46; *State v. Anderson*, 105 Wn. App. 223, 229, 19 P.3d 1094 (2001); *State v. Hauser*, 19 Wn. App. 506, 509, 576 P.2d 420 (1978). But an issuing magistrate may draw reasonable inferences from the surrounding circumstances. *Anderson*, 105 Wn. App. at 229 (citing *State v. Garcia*, 63 Wn. App. 868, 873, 824 P.2d 1220 (1992)). Whether facts set out in an affidavit are sufficient to conclude that probable cause exists

---

[4] Nusbaum also argues that even if the firearms were legally seized, they are not subject to forfeiture under RCW 9.41.098 because he never "used or displayed" them while committing his offense. Br. of Appellant at 28. We do not reach this issue because we hold that the warrant was invalid.

is a question of law; thus, our review is de novo. *In re Det. of Petersen*, 145 Wn.2d 789, 799-800, 42 P.3d 952 (2002).

¶12 Here, the nexus between the flunitrazepam and the Nusbaum residence was dependent on delivery and acceptance of the package. In particular, the complaint stated that the warrant *"would only be served,* provided that the package containing the flunitrazepam is delivered to [Nusbaum's] residence." Ex. 1 at 3 (emphasis added). A warrant that is " 'conditioned upon future events which, if fulfilled, would create probable cause' " is an anticipatory warrant. *State v. Gonzalez*, 77 Wn. App. 479, 484, 891 P.2d 743 (1995) (quoting *United States v. Garcia*, 882 F.2d 699, 700 (2d Cir. 1989)). Assuming the warrant here was a valid anticipatory warrant, it was conditioned on delivery and acceptance of the package; without this, the issuing magistrate could not reasonably infer that criminal activity would occur in or contraband would exist at Nusbaum's residence. Because the officers did not deliver and Nusbaum did not accept the package, the condition was not met and the warrant was invalid.[5]

¶13 But the State argues that delivery of the package is irrelevant because the issuing magistrate had probable cause to believe "there would be evidence of the drug order in the house." Br. of Resp't at 5. We disagree.

¶14 Probable cause to believe that a man has committed a crime on the street does not necessarily give rise to probable cause to search his home. *Thein*, 138 Wn.2d at 148 (citing *State v. Dalton*, 73 Wn. App. 132, 140, 868 P.2d 873 (1994)). And an officer's general conclusions about drug dealers' habits are, standing alone, insufficient to justify a search of a suspected drug dealer's home. *Thein*, 138 Wn.2d at 148-49 (holding that broad generalizations do

---

[5] The State does not contend that the condition was met when Nusbaum briefly touched the package on his front porch. If Nusbaum's touch had satisfied the condition, then the condition was insufficient to establish probable cause because until Nusbaum or someone took the package into the home, the issuing magistrate had no reason to believe that criminal activity was occurring or contraband existed in the home.

not alone establish probable cause); *see also State v. Olson,* 73 Wn. App. 348, 357, 869 P.2d 110 (1994) (stating "an officer's belief that persons who cultivate marijuana often keep records and materials in safe houses is not, in our judgment, a sufficient basis for the issuance of a warrant to search a residence of a person connected to the grow operation").

¶15 Absent the condition of delivery and acceptance, the issuing magistrate had only Sapp's conclusory opinion that he believed "there is evidence, fruits, and/or instrumentalities of violations of the Uniformed Controlled Substances Act in and on the premises and/or vehicles described above." Ex. 1 at 3. He then asked for and got permission to search for:

> Any and all: Flunitrazepam . . . records, books, research products . . . [d]rug paraphernalia . . . United States currency . . . [e]vidence of occupancy . . . receipts of real property transactions . . . letters of credit, bank drafts . . . money wrappers . . . [t]elephone books and/or address books . . . phone answering devices . . . electronic equipment . . . photographs or video recordings . . . items used for surveillance.

Ex. 2. But Sapp offered no specific facts to support his belief; he merely recited the familiar "drug dealers' habits" language, which alone is insufficient. *Thein,* 138 Wn.2d at 148. Therefore, we find that the warrant was invalid and the search was illegal.

### III. Forfeiture

■ ¶16 Under RCW 9.41.098(1)(d), Washington superior courts and courts of limited jurisdiction may order forfeiture of a firearm that is proved to be in the possession or under the control of a person at the time the person committed or was arrested for committing a felony or committing a nonfelony crime in which a firearm was used or displayed.

■ ■ ¶17 A prosecutor may not use the fruits of an illegal search as evidence against a defendant at trial. *State*

*v. Marks*, 114 Wn.2d 724, 730-31, 790 P.2d 138 (1990); *State v. Maddox*, 116 Wn. App. 796, 806, 67 P.3d 1135 (2003), *aff'd*, 152 Wn.2d 499, 98 P.3d 1199 (2004). And without the evidence obtained in the illegal search, the prosecution could not have *proved* that Nusbaum possessed or controlled the guns at the time of his arrest. *See One 1958 Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 696, 85 S. Ct. 1246, 14 L. Ed. 2d 170 (1965) (the exclusionary rule applies to civil forfeiture hearings); *cf. Barlindal v. City of Bonney Lake*, 84 Wn. App. 135, 141-42, 925 P.2d 1289 (1996) (holding that a city, which brought an action for forfeiture of firearms recovered from a drug suspect's residence, was collaterally estopped from introducing evidence of drug possession; thus, it could not prove the firearms were used in drug transactions and could not forfeit them). Because the officers seized the weapons during an illegal search, the court erred in ordering forfeiture.

¶18 But Nusbaum has pleaded guilty to a class B felony. As a class B felon, he may not legally own or possess guns. *See* RCW 9.41.040(1)(a); *see also* RCW 69.50-.401(2)(a); RCW 9.41.010(12)(b). He may, however, sell, give away, or otherwise dispose of the weapons through a custodian. Accordingly, we reverse the order of forfeiture and remand for the trial court to enter an order allowing Nusbaum to dispose of the weapons within a reasonable time and without personally taking possession of them.

¶19 Reversed and remanded.

MORGAN, A.C.J., and HUNT, J., concur.